(61 Misc. Rep. 457.)

SKANEATELES PAPER CO. v. AMERICAN UNDERWRITERS' FIRE INS. CO. OF MONROE COUNTY.

(Supreme Court, Special Term, Monroe County. October, 1908.)

1. INSURANCE (§ 192*) — CO-OPERATIVE INSURANCE COMPANIES — EXTENDING TERRITORIAL LIMITS—INVALID EXTENSION—LIABILITY OF POLICY HOLDERS IN ANNEXED TERRITORY.

If a county co-operative insurance company extends its business into new counties without having $1,000,000 of insured property for each new county, as expressly required by Insurance Law (Laws 1898, p. 1506,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

c. 654) § 278, as amended, the members taking policies upon property sit-
uated in the new counties cannot be compelled to pay assessments.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

2. INSURANCE (§ 192*)—CO-OPERATIVE INSURANCE COMPANIES—RIGHT TO RE-
INSURE—LIABILITY TO ASSESSMENT—"INSURED PROPERTY."

A town or county co-operative insurance company may reinsure the
risks of another such company, and the subject-matter of the reinsurance
thereupon becomes "insured property" of the indemnifying company with-
in Insurance Law (Laws 1898, p. 1506, c. 654) § 278, as amended, allowing
a town or county co-operative insurance company doing business in five
counties to extend into adjoining counties not exceeding one for each
$1,000,000 of its "insured property," and the reinsured company becomes
a member of the indemnifying company and subject to pro rata liability
for assessments to pay losses during the life of the reinsurance contract
(Laws 1897, p. 12, c. 29); section 268 requiring assessments for a loss or a
general assessment for the current year to pay estimated losses to be made
pro rata "upon all the property at that time insured."

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

3. INSURANCE (§ 57*).

Where a county co-operative insurance company extended its business
into adjoining counties, and for three years dealt with agents and in-
surers in those counties without any officer or director questioning the
regularity of the extension, it was thereafter precluded from contending
that the resolution for the extension was not passed by a quorum of the
board of directors.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 57 *]

4. INSURANCE (§ 192*)—CO-OPERATIVE INSURANCE COMPANIES—ASSESSMENTS
TO PAY LOSSES—EXTENT OF AUTHORITY—"DEFICIENCY IN THE PRECEDING
YEAR."

Insurance Law (Laws 1892, p. 2032, c. 690) § 268, amended by Laws
1897, p 12, c. 29, authorizes directors of a county co-operative insurance
company to borrow money to pay a loss and to make an estimate of the
sum necessary to pay losses and expenses for the current year and supply
any deficiency in the preceding year, and assess the amount at such times
as in their discretion would be most advantageous to the company, and
that no assessment shall be invalid because made to pay money borrowed
and used to pay a claim for loss or damage. *Held*, that a "deficiency
in the preceding year" embraces outstanding claims not paid when the
year closed, including money borrowed to pay losses, and is not confined
to claims originating in the preceding year, and the company could at
any time levy an assessment sufficient to extinguish all claims and de-
ficiencies for which the company was liable, as well as to supply funds
for carrying the company through the current year, though it would bind
new members for previous debts and would relieve persons who were
members when the old debts were incurred, but had subsequently dropped
out.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

5. INSURANCE (§ 71*)—CO-OPERATIVE INSURANCE COMPANIES—ASSESSMENTS TO
PAY DEBTS—POWER OF RECEIVER.

Though Insurance Law (Laws 1892, p. 2032, c. 690) § 268, amended by
Laws 1897, p. 12, c. 29, restricts the power of directors of a county co-
operative insurance company to make an assessment to members owning
property insured at the time of the assessment, a receiver appointed for
the company upon its insolvency may make an assessment to pay its
debts upon those who were members when he was appointed; the rights
and liabilities of the creditors and members being determined by their
status at the time the receiver was appointed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 94; Dec. Dig.
§ 71.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. INSURANCE (§ 192*)—CO-OPERATIVE INSURANCE COMPANIES—POLICY AND BY-LAWS—NOTICE OF CHARACTER OF COMPANY.

A policy of a county co-operative insurance company taken in connection with the company's by-laws printed on the back thereof *held* sufficient to disclose to one familiar with the statute under which it was organized, and which was mentioned in the by-laws, that the company was a co-operative company; and hence the fact that applications for insurance in a co-operative insurance company which contained a promise of the insured to pay his pro rata share of losses sustained by other members during his membership were not signed by the applicants, but were generally signed by the agent using the applicants' names, did not relieve the applicants from their obligations as members to so pay.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

7. INSURANCE (§ 197*)—CO-OPERATIVE INSURANCE—LIABILITY OF MEMBERS—FAILURE TO SIGN UNDERTAKING REQUIRED BY STATUTE.

The provision of Insurance Law (Laws 1892, p. 2032, c. 690) § 267, as amended, that a person insured in a county co-operative insurance company shall give his undertaking to pay to the company his pro rata share of losses to members thereof, etc., for which he is liable as a member, is for the protection of the company, and may be waived by it without losing its right to enforce the obligation.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 197.*]

8. INSURANCE (§ 192*)—CO-OPERATIVE COMPANIES—FORM OF POLICIES ALLOWED—STATUTORY PROVISIONS.

While mutual fire insurance companies organized under Insurance Law (Laws 1892, p. 1973, c. 690) §§ 110–137, as amended, may issue a policy for a fixed sum without liability for further assessment under section 116 (page 1977), providing that they may, in lieu of a deposit note, receive from an insured the whole amount of the premium in cash without subjecting him to any other liability, town and county co-operative insurance companies organized under sections 260–279 (page 2029) are given no such right.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

Action by the Skaneateles Paper Company, a judgment creditor, against the American Underwriters' Fire Insurance Company of Monroe County to sequestrate defendant's property. Motion on behalf of defendant's receiver for an order confirming the report of the referee to ascertain defendant's debts and its members liable to assessment therefor. Referee's report confirmed, and levy of assessments by receiver directed.

John F. Nash and Leonard T. Haight, for the receiver.
George F. Slocum, for the Attorney General.
Fary B. Beecher, for Arthur D. Tyler and others.
Reuben R. Lyon, for William L. Noble and others.
William F. Lynn, for Edwin R. Curtis and another.

SUTHERLAND, J. Without going extensively into all the matters which have been discussed with much ability and research by counsel, it will be sufficient to say that all the objections to the confirmation of the report of the learned referee have been carefully considered, and that they must be overruled and the report confirmed, and the receiver directed to make an assessment as recommended. But some of these objections will be referred to briefly.

The American Underwriters' Fire Insurance Company of Monroe

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

County was incorporated November 24, 1902, pursuant to section 263 and the other sections of the insurance law (chapter 690, p. 2030, Laws 1892) as amended, providing for the incorporation of town and county co-operative fire insurance companies. This company, by its original articles, was authorized to do business in the five counties of Monroe, Ontario, Seneca, Cayuga, and Onondaga. In 1904 the business was extended to Steuben and Chemung counties; the certificate of extension being signed by the directors of the company under date of November 12, 1904, and filed in the offices of the various counties affected on or about December 5th of that year. There are a large number of members reported to be subject to assessment whose insured property is situate in Chemung and Steuben counties, and some of the reported liabilities of the company are for losses incurred in those counties, and a controversy has arisen as to the regularity of the extension of the business into those counties. That extension was illegal unless the valid insurance issued by the company and outstanding at the time of the extension aggregated over $2,000,000. After the filing of the referee's report and the motion to confirm had been brought on, considerable evidence was taken at the Special Term bearing upon the amount of insurance outstanding in November and December, 1904, when the extension was perfected, and the question of fact turns upon the validity of a contract of reinsurance entered into between the American Underwriters' Fire Insurance Company and the Royal Mutual Fire Insurance Company in 1904, prior to the extension. The risks originally insured by the Royal Mutual which were covered by the reinsurance amounted to $420,517.17. If this sum is added to the amount of insurance issued in the first instance by the American Underwriters and outstanding when the extension was effected, the total is over $2,000,000.

When this extension was brought about, section 278 of the insurance law (Laws 1898, c. 654, p. 1506) provided as follows:

"Any such corporation [town or county co-operative insurance corporation] so organized and so extending and doing business in five counties may extend its business into any number of adjoining counties, not exceeding that number in all, which shall be equal to one county for each full million of dollars of its insured property in force at the time of any such extension."

And that extension, when allowable, had to be made by filing in the office of the clerk of each of such counties to which the business was to be extended a certified copy of the original certificate and statement filed at the time of the incorporation, and also by filing in the office of the Secretary of State and of the county clerk of each county in its territorial limits a certificate signed by at least two-thirds of its directors, stating the counties in which such corporation proposed to do business. The necessary papers were filed as the statute requires. It appears that the Royal Mutual paid to the American Underwriters for this reinsurance the pro rata amount of the premiums received by the Royal Mutual upon the risks assumed by the American Underwriters for the unexpired term of those policies, or credited such sum upon the open account between these companies for reinsuring each other's risks. Now, unless the contract of reinsurance is valid and the insurable interest of the Royal Mutual covered by this reinsurance can be properly considered a portion of the gross amount of the property in-

sured by the American Underwriters, as the word property is used in section 278, quoted above, then "its insured property" never amounted to two millions, and so it was prohibited from extending its business into the additional counties (Laws 1893, pp. 1714, 1715, c. 687, §§ 271, 278), and in that case the members taking policies upon property situate in those two counties could not be compelled to pay any further assessment. Patrons of Industry Fire Ins. Co. v. Plum, 84 App. Div. 96, 82 N. Y. Supp. 550. But the validity of such a contract of reinsurance has been sustained in the case of Niagara Fire Ins. Co. of Erie Co. v. Western N. Y. Co-operative Fire Ins. Co. of Monroe County, which was an action brought against a co-operative company organized under the statute we are considering to recover upon such a contract of reinsurance. A demurrer to the complaint was overruled, and the judgment of the Special Term overruling the demurrer was affirmed by the Appellate Division of the Fourth Department, without opinion. 75 App. Div. 609, 77 N. Y. Supp. 1134. The appeal papers show that the validity of the agreement of the defendant company reinsuring the risks of the plaintiff was the one question involved. That decision of the Appellate Division upholding the agreement would seem to be controlling here as to the right of the American Underwriters to indemnify the Royal Mutual from loss upon its policies. And although the words "its insured property," as used in section 278, meaning the property insured by the American Underwriters, do not seem to be as appropriate to the insurable interest of the Royal Mutual which is protected by the indemnity extended to it by the American Underwriters as they are to the houses and tangible effects insured in the policies issued directly by the American Underwriters, nevertheless the Royal Mutual had an insurable interest in the preservation of the property covered by its own policies; and, if a co-operative company like the American Underwriters can become a reinsurer, it is not impossible in a legal sense to apply the term "insured property" to the subject-matter of that reinsurance. Mutual Safety Ins. Co. v. Hone, 2 N. Y. 235. In that event it would necessarily follow that the company obtaining such reinsurance would become thereby a member of the indemnifying co-operative company and subject to pro rata liability for assessments during the life of the contract as other members because by Laws 1892, p. 2032, c. 690, as amended (Laws 1897, p. 12, c. 29), § 268, the assessments must be laid "upon all the property at that time insured."

In respect to the extension of its business into Steuben and Chemung counties, the further objection has been raised that the resolution for the extension of its business was passed at a meeting of the directors at which only three were present; that number not constituting a quorum of the board. The by-laws provide for eleven directors. Certain of them had resigned and four new directors were elected at that meeting. The minutes of the meeting state that the president reported that the insurance in force amounted to over $2,000,000, and a resolution was adopted by the said three old directors that the company extend its business into Steuben and Chemung counties, and that the officers take the proper steps to bring about such extension. A certificate for such extension was accordingly made out on the same day, and was

signed and acknowledged by eight of the directors, including those newly elected, and filed in the county clerks' offices of the various counties on or about December 5, 1904, and in the subsequent dealings of the company with the Steuben and Chemung county agents and insurers, covering a period of over three years, no officer or director ever questioned the regularity of the extension. The objection of no quorum comes too late to be seriously entertained.

Some of the policy holders object to certain claims which have been allowed by the referee upon the ground that they arose more than two years prior to the appointment of a receiver. This objection, based upon the wording of section 268 of the insurance law, hereafter quoted, cannot be sustained, although the result is to throw a burden of old debts upon new members who have joined since the debts were incurred, and to relieve from responsibility those who were members when the losses were incurred, but are no longer members; the directors having neglected to assess them for their full pro rata share of losses before their membership expired. It appears that the directors, not having cash on hand to meet the losses in full, borrowed money to make up the deficiencies; and the notes given for the moneys so borrowed have been carried along for more than two years. Section 268 of the insurance law confers authority upon the directors to borrow money to pay a loss, and that section also provides for the levying of assessments, as follows:

"If the directors or executive committee deem it to be for the interest of the corporation, they may make an estimate of such sums as in their judgment will be necessary to pay all losses, damages and expenses for the current year and supply any deficiency in the preceding year, and proceed to assess, levy and collect the same of the members of the corporation, at such times as in their discretion will be most advantageous to the corporation. Such assessment shall be made pro rata upon all the property at such time insured, according to its classification or according to the amount insured, sufficient to pay the amount so estimated."

It is further provided that:

"No assessment shall be invalid because made in whole or in part for the purpose of paying any money borrowed by the directors or executive committee, which has been used in the payment of any claim for loss or damage against the corporation."

The contention that no assessment can be levied to pay any claim originating more than two years prior to the assessment is based upon the words quoted from section 268, empowering the directors to make an estimate and assess for losses and expenses for the current year and to supply "any deficiency in the preceding year." But these concluding words should not be so narrowly construed as to refer only to claims which had their origin in the preceding year. The deficit of the preceding year was the amount of valid outstanding claims of the company which had not been paid when the year closed. The directors are empowered at any time to levy an assessment sufficient to extinguish all the claims and deficiencies for which such a company is liable at any time, as well as to supply funds for carrying the company through to the end of any current year.

By section 268 it would seem that the Legislature has restricted the power of the directors to make an assessment to members owning

property insured at the time of the assessment. But in the case at bar the right of assessment to pay the debts of the company can be exercised by the receiver upon those who were members at the time he was appointed; the company now being insolvent, and the rights and liabilities of the creditors and members being determined by their status at the time the receiver was named. It is not possible at this late day to apportion the losses over as wide an area as natural equity and an adherence to the fundamental conception of co-operative insurance would seem to require. Unfortunately, many who should have contributed more than they did to pay the claims originating during their membership have escaped further liability by the neglect of the directors to adequately assess the members as the losses occurred. The directors never made an assessment until shortly before the break down of the company in 1908, when the first assessment was made, which was in process of collection when the receiver was appointed, but was not sufficient to cover the remaining debts and expenses.

Under section 267 of the insurance law, it is provided that:

"Every person insured in and by any such corporation shall give his undertaking in such form as the corporation may prescribe, to pay his pro rata share to the corporation of all losses or damages sustained by any member thereof from any cause specified in the policy, which undertaking shall be filed by the secretary in the office of the corporation. He shall also pay such reasonable sum for policies and expenses, and within such time as may be required by the by-laws."

No such formal undertaking was given, it would seem, by any of the policy holders of this company. The power of a member to withdraw before his policy expires and thereby free himself from obligation to pay further assessments is provided for in section 274, which states that:

"Any member of any such corporation may withdraw therefrom at any time by ten days' notice in writing to the secretary and paying his share of all claims existing against the corporation, and surrendering his policy or policies."

The scheme outlined by the Legislature for these co-operative companies is clearly based upon the proposition that all the persons insured shall constitute the members of the company, membership being acquired by the act of becoming insured and no one being insured who is not a member, and that the directors shall from time to time ascertain the losses of the company and levy assessments sufficient in number and with such frequency as to substantially require each member, before his membership expires, to pay his pro rata share of the losses and expenses incurred during his term. If the members are willing to make an advance payment at the outset of their membership of a sum estimated to be probably sufficient to cover such pro rata share, the statute does not forbid such procedure. But in that event the member remains liable during his membership to assessment for a deficiency if one should arise. The right of the directors to borrow money to pay losses is given to facilitate the performance of the business in a practicable way. But the power to borrow to pay losses is not limited, and, if the directors fail to do their duty in levying sufficient assessments, but borrow money to pay the deficiencies, the loss ultimately does not

fall upon the innocent creditors who have loaned their money, but upon the members who remain in the company and are thereby liable to be assessed for all the debts remaining unpaid.

In respect to the question whether the policy holders knew that they were becoming members of a co-operative company when they took out insurance in the American Underwriters, it is shown that it was not the practice of the agents of the company to require the applicants for insurance to sign written applications. It seems that these applications were generally signed by the agent, using the name of the applicant for that purpose. The applications contained a clause promising that the insured will pay his pro rata share of all losses or damages caused by fire or lightning which may be sustained by any member or members thereof during his continuance in the company. The policies issued by the American Underwriters to all its policy holders were similar to the Perry Policy, which begins as follows:

"American Underwriters Fire Insurance Company of Monroe County, incorporated under the laws of New York 1892, in consideration of the stipulations herein named and of fifteen and $38/100$ dollars premium, does insure Cornelia N. Perry for the term of three years from the 25th day of August, 1905, at noon, to the 25th day of August, 1908, at noon, against all direct loss or damage by fire except as hereinafter provided, to an amount not exceeding seventeen hundred dollars, to the following described property while located and contained as described herein, and not elsewhere, to wit:" etc.

The regular standard form for fire insurance policies was used, and among other clauses is contained the following:

"If this policy be made by a mutual or other company having special regulations lawfully applicable to its organization, membership, policies or contracts of insurance, such regulations shall apply to and form a part of this policy as the same may be written or printed upon, attached, or appended thereto."

On the back of the policy the by-laws of this company are printed. Article 2, § 2, of the by-laws, provides that "each member of the company shall have the right to vote at the annual meeting in person, or by proxy." Article 8, § 3, treating of the powers of the executive committee, states as follows:

"The executive committee is authorized to fix the rate of insurance, and the ratio of advance premium to be paid upon each policy for losses and expenses, and from time to time make such alterations therein as it shall deem expedient for the interest of the company; such alterations to be subject to review by the board of directors; it shall have power to classify the property at the time of issue according to law and may issue policies on such risks in villages as it shall determine."

Section 4 reads as follows:

"Whenever the amount of any loss is ascertained which exceeds in amount the cash on hand of the company, the executive committee shall have power to borrow money sufficient to pay the loss, or otherwise provide for its payment in the manner prescribed by section 268 of article 9 of the insurance law, to pay what the cash on hand falls short of paying or for the whole loss or damage as they may decide is best for the interest of the company."

It will be noted that section 268 of article 9 of the insurance law, referred to in section 4 just quoted, empowers the directors of a co-operative company to make an assessment upon all the property insured

to pay whatever losses or damages the company is liable for, which the cash on hand falls short of paying.

Article 9 of the by-laws is as follows:

"Section 1. Every person who shall sign an application for insurance as required by the certificate of incorporation, or by the by-laws of said company, shall become a member thereof.

"Sec. 2. Application for membership in this company shall be made in accordance with the rules prescribed by the executive committee.

"Sec. 3. Such membership shall begin at noon on the day specified in said application.

"Sec. 4. Any member of this company may withdraw therefrom at any time by giving ten days' notice in writing to the secretary, paying his share of all claims then existing against the company and surrendering his policy or policies.

"Sec. 5. Such membership may also be terminated by the cancellation of the policy or policies of such member, in the manner prescribed by law."

And article 12, as to the duties of members, is as follows:

"Section 1. This company requires of its members strict conformity to the following regulations, viz.: To adjust all stoves and pipes so as not to come in contact with wood or any combustible matter [here follow other directions as to safeguarding buildings]."

While the fact is not stated in so many words on the face or back of the policy that the American Underwriters' Fire Insurance Company is a co-operative company, a careful reading of the entire instrument, including the by-laws on the back, would disclose to one familiar with the statute that such is the fact. In my opinion the failure of the insured to sign an undertaking or sign the written application for insurance does not relieve them from the obligations of membership. The requirement of section 267 of the insurance law that "every person insured in and by any such corporation shall give his undertaking," etc., is for the protection of the company; and may be waived by the company without losing its right to assess.

Although the members were compelled to pay only this flat rate when the policies were issued in the first instance, the legal obligation to pay such assessments as may be necessary grows out of the relation of membership in this co-operative company, which relation was entered into by each person who took or retained his policy knowing that the company was co-operative; and those who remained members when the receiver was appointed are liable for assessments pro rata to pay the remaining debts of the company and the expenses incident to the closing up of its affairs. The referee has reported that the valid claims unpaid against the company aggregate about $19,000, and that it will be necessary to raise upwards of $22,000 from about 1,200 remaining members to cover the liabilities of the company, with the necessary expenses incident to the receivership and the collection of the assessments.

It has been suggested that this company might have issued two classes of policies—one to members and one to nonmembers; the latter class of policies being issued for a flat rate premium, without liability to assessment on the part of the person insured—and the practice which has been followed by mutual fire insurance companies and has been sanctioned by the courts as to such companies has been referred

to as analogous and as warrant for the contention that those who did not sign a formal application for membership should be treated as nonmembers holding policies for a flat rate, with no further liability. But, if the cases justifying such practice on the part of mutual fire insurance companies be examined carefully, such as Mygatt v. N. Y. Protection Ins. Co., 21 N. Y. 52, it will be seen that the right to issue both kinds of policies was found in the breadth of the statutes providing for the organization of mutual fire insurance companies and in the language of the charters of the companies under examination. But in the insurance law now in force under which this company was formed a distinction is drawn between mutual fire insurance companies and town and county co-operative insurance corporations. Mutual companies are provided for and regulated in article 3; and the right of a mutual company to issue a policy for a fixed sum, with no liability for further assessment, is expressly recognized in section 116. Town and county co-operative insurance corporations are regulated by article 9; and the provisions of article 9 very clearly exclude the right of co-operative companies to issue policies for a fixed cash premium, with no liability to further assessment.

In respect to the policy holders who are reported as liable to assessment by the referee, there is nothing in the evidence to show that any deception was practiced upon them as to the character of the insurance which they were taking out; and such defense, if any exists, would have to be affirmatively established.

An order may be made confirming the referee's report and directing the levying of the assessments by the receiver in accordance with the recommendations contained in the report.