CHEESE MAKERS MUTUAL CASUALTY COMPANY, Appellant, vs. DUEL, Commissioner of Insurance, Respondent.*

*May 21—June 16, 1943.*

* Motion for rehearing denied, with $25 costs, on September 14, 1943.

For the appellant there were briefs by *Lehner & Lehner* of Oconto Falls and *Rieser & Mathys* of Madison, and oral argument by *R. M. Rieser, Adolph P. Lehner,* and *H. M. Lehner.*

For the respondent Morvin Duel as commissioner of insurance there was a brief by the *Attorney General* and *James Ward Rector,* deputy attorney general, and oral argument by *Mr. Rector.*

For the respondent Morvin Duel as liquidator there were briefs by *Stroud, Stebbins & Wingert* of Madison, and oral argument by *Byron H. Stebbins.*

WICKHEM, J.   In order to understand the controversy presented by this appeal some comment should be made upon the peculiar procedural aspects of the case.   These are two more or less unrelated lawsuits tried as one.   One is against Morvin Duel, as commissioner of insurance, and the other is against Duel as liquidator of the Wisconsin Mutual Insurance Company.   Plaintiff seeks injunctional and declaratory relief and alleges that, by reason of the net effect upon it of two proposed courses of action by Duel in separate capacities, its general credit and business prospects are seriously affected. Upon this appeal defendant submits two wholly separate

briefs, prepared by different attorneys, and each limiting itself to contentions bearing on the particular capacity in which the respective attorneys represent the defendant. Generally speaking, the controversies arise out of, (1) the insistence of Duel as insurance commissioner that plaintiff maintain a surplus of $50,000 in claimed response to the calls of sec. 201.03 (9), Stats., and (2) Duel's assertion as liquidator of the Wisconsin Mutual Insurance Company of a claim against plaintiff for an assessment based upon the fact that plaintiff had reinsured certain of its risks with the Wisconsin Mutual Insurance Company. Plaintiff's claims are, (1) that sec. 201.03 (9) does not apply to it, but only to companies organized after the enactment of this subsection in 1941; (2) that under the policy of reinsurance its sole liability was for the agreed premiums and that it had no liability to assessment. Its claim to declaratory relief is grounded upon the combined effect upon it of Duel's contentions in his two separate capacities, plaintiff asserting that if it is to be compelled to maintain a minimum surplus of $50,000 it must know seasonably whether it is liable for an assessment of upwards of $8,000 so that it may maintain its condition as a solvent and going concern, and that in view of the combined threats of defendant it is in a position where it must have declaratory relief.

Since these controversies, except for the circumstances just mentioned, are separate and distinct, we find it convenient to deal with them separately, at least at the outset.

With respect to the question as to the proper construction of sec. 201.03, Stats., plaintiff is clearly entitled to declaratory relief, and we proceed to consider that branch of the case upon its merits. The issue is quite simple.

Plaintiff was organized in 1935 as a casualty insurance company and is engaged in writing liability and automobile insurance. In 1941 the legislature, by ch. 127, Laws of 1941, entitled an act to amend sec. 201.03 (1) (a), (b), and (2), Stats., and to create sec. 201.03 (9), relating to the incor-

poration of mutual insurance companies, created the sections which are the foundation of the present controversy. Sec. 201.03, which is headed "Incorporation of mutual insurance companies," provides in sub. (1) (a):

"It shall have not less than four hundred *bona fide* applications for insurance on property or risks located in this state from not less than four hundred persons and upon not less than four hundred separate risks in this state on which the cash premiums, *which shall be paid in full by each of the four hundred applicants with their applications,* plus cash contributions shall amount to at least *$50,000,* which shall have been actually paid in, in cash, by the applicants *and contributors, provided that such minimum amount shall be $25,000 in the case of a company organized to write only the coverage authorized by subsection (1) of section 201.04.*"

Sec. 201.03 (1) (b), Stats., provides:

"It shall be examined by the commissioner and he shall certify that the company has complied with all requirements of law and that it has on hand in cash or invested as permitted by law, the premiums *and contributions amounting to said minimum amount.*"

The portions above italicized were added by amendment. Sec. 201.03 (9), Stats., provides:

"Any mutual insurance company after January 1, 1943, transacting automobile insurance authorized by subsection (15) of section 201.04 shall maintain a minimum surplus of $50,000 and when such surplus falls below $50,000, the commissioner shall order the surplus replaced and if not so replaced in fifteen days, the commissioner may proceed against such company under section 200.08."

This subsection is an entirely new enactment.

The question is whether sub. (9), sec. 201.03, Stats., applies to a mutual company organized and existing at the time of the enactment in 1941 of ch. 127, Laws of 1941. Plaintiff claims that such secs. 201.03 (1) and 201.03 (9), Stats.,

relate only to the manner of organization of mutual companies and have no application to existing corporations.

It is asserted that since by the terms of sec. 201.03 (2), Stats., contributions to the initial minimum fund required to be made by sec. 201.03 (1) (a) shall be returnable five years from the date of organization, or at any time thereafter when the earned surplus of the company is equal to, or in excess of the minimum fund, a holding that sub. (9) applies to existing companies would leave no procedure for the return of such funds in the future and therefore would deny to one class of contributors a right to refund granted to others, raising a doubt as to the constitutionality of the section. It is argued that sub. (9) refers only to the maintenance of a fund. Plaintiff construes this to mean that all new companies organized after the enactment of ch. 127, Laws of 1941, must, after January 1, 1943, if they transact automobile insurance business, maintain the original contribution of $50,000 as a surplus of $50,000 and that since companies which pre-existed the enactment had no such initial fund requirement, no power vests in the commissioner to compel them to increase their surplus to $50,000 so long as they are solvent. The reference to January 1, 1943, is claimed by plaintiff to apply only to a fund which had existed prior to that date, and since there is no requirement that companies organized before the enactment create such a fund, sub. (9) can only relate to companies organized after its enactment.

We are of the opinion that these contentions are not sound. In the first place, the language of sub. (9), sec. 201.03, Stats., plainly applies to all mutual companies, whether organized after the enactment of the 1941 law or not. In the second place, several subsections of sec. 201.03, also relate to existing companies. Sub. (8) removes all doubt as to this by referring to—

"Any mutual insurance corporation which has been or may be organized. . . ."

Subs. (6) and (7), sec. 201.03, Stats., are cast in the same terms as sub. (9) but these were pre-existing statutory provisions which formerly constituted sec. 201.03, and always applied to existing companies. The legislative history of this section indicates what was brought together in it. Prior to 1937 sec. 201.03 was entitled, "Amendment of articles of mutual companies; quorum." At that time it was composed of what are now subs. (6) and (7) and clearly applied to existing companies. At that time sec. 201.09 was entitled "Incorporation of mutuals, membership." Sec. 201.14 was entitled "Conditions of transacting insurance." Sec. 201.15 was entitled, "License; prerequisite to business." Ch. 203, Laws of 1937, repealed secs. 201.03, 201.09, 201.14, 201.15 and consolidated them into a newly created sec. 201.03 entitled as it now is. Provisions applicable to existing corporations were retained as subs. (6) and (7), and sub. (8) specifically applicable to existing companies was added. Hence, some portions of sec. 201.03, as created in 1937, relate to companies to be organized and some to those already organized.

This was the situation at the time ch. 127, Laws of 1941, was enacted. Thus, the assertion that sec. 201.03, Stats., taken as a whole applies to newly incorporated companies is not borne out by the facts. Not only is the section not limited to newly organized companies, but the language of sub. (9) is as literally applicable to existing companies as is the language of subs. (6) and (7). The contention that sub. (9) obviously is intended to implement and carry forward the policy of the first subsection is ingenious but we cannot agree to it. It appears to us that the requirements of sub. (1) and sub. (9) are wholly separate and distinct. Sub. (1) requires that $50,000 be paid into the newly organized company before it be permitted to do business. This, of course, is not a surplus at all. It is simply what the statute designates it—a cash contribution—and is subject to having charged against it the liabilities for unearned premiums. It cannot, therefore, create

a surplus of $50,000. The requirements of sub. (9) are for the maintenance of a surplus after January 1, 1943. This is quite a different thing and there is no statutory evidence of such a connection between the requirements of subs. (1) and (9) as is argued by plaintiff. The suggestion that sub. (9) simply compels newly organized companies required by sub. (1) to make an initial contribution of $50,000 to build this up into a surplus by 1943 does not impress us as a sound exposition of the purpose of sub. (9). The literal language of the subsection is against this construction and we cannot perceive any legislative policy that would make such a distinction with respect to surplus between newly organized companies and those in existence prior to the act.

We are of the view that making January 1, 1943, the date after which a surplus must be maintained was for the purpose of giving all insurance companies, whether organized before or after the enactment of ch. 127, Laws of 1941, an opportunity to build up the required surplus. Since all companies organized after 1943 must come into being with the surplus requirement satisfied, there would seem to be no particular reason why the statute should, if intended to apply only to newly organized companies, defer the surplus requirement at all.

From all of this we conclude that plaintiff's position is not well taken; that the position of defendant is sound and that sec. 201.03 (9), Stats., applies to companies existing at the time of its enactment and therefore to plaintiff.

The next question is whether defendant, in his capacity as liquidator of the Wisconsin Mutual Insurance Company, may assess plaintiff upon a policy of reinsurance by the terms of which Wisconsin Mutual for a specified premium reinsured certain risks of the plaintiff under a policy of reinsurance. We have held with respect to the first branch of this controversy that plaintiff was entitled to declaratory judgment. There is a serious question, whether upon the second branch of the

controversy plaintiff has any right to a declaratory judgment, and whether the trial court abused its discretion in declining to give such relief. This is a point of some difficulty and of great importance in the procedural field. It is perfectly clear that courts ordinarily should not interfere with liquidation proceedings at the behest of one of several hundred persons against whom a claim is asserted and for separate consideration lift the merits of this claim out of proceedings designed for the very purpose of their determination. This is true, even though it may be useful to one of the claimants to find out in advance of the litigation of his claim what his legal rights and duties are with respect to it. The purpose of the declaratory-judgments law, sec. 269.56, Stats., was to expedite justice and to avoid long and complicated litigation—not to interrupt the orderly process of liquidation or other legal proceedings presently in operation. We think that it would be a grave perversion of the principles of the act and constitute an abuse of discretion for courts to apply it in such a situation.

The circumstance in this case that is urged as warranting departure from this general rule is that we are here dealing with the activities of a single public official acting in two capacities with respect to this plaintiff. Plaintiff asserts that this is not a mere question which it would like to have answered because of some ordinary concern over its solvency and a desire to know in advance of action upon the claim in the liquidation proceedings how it is going to fare in those proceedings. Rather, plaintiff asserts that it is a case where defendant as commissioner is insisting that plaintiff presently maintain a surplus of $50,000 in accordance with the terms of sec. 201.03, Stats. If defendant is successful in this respect then plaintiff claims that it should know now what it must do in order to meet the requirements of the defendant acting as commissioner. Since defendant, acting as liquidator, asserts a claim against plaintiff for upwards of $8,000 in the liquidation proceedings plaintiff claims that it should have this liability deter-

mined contemporaneously with the establishment of its liability to maintain a surplus.

After careful consideration, we are of the view that this is not a case for declaratory relief, and in any event, that the trial court did not abuse its discretion in refusing a declaration. Proceedings are pending in which the question submitted for declaration may be fully and finally determined, and the fact that plaintiff's peculiar position and necessities make it desirable from its viewpoint to have a declaration is not a sufficient ground for disturbing the ordinary processes of liquidation. To yield to such considerations would inject innumerable and unwarranted interruptions into a proceeding which, as we can attest, has sufficient difficulties without such complications. In connection with this, see 135 A. L. R. 934, for a review of the authorities. While noting a conflict of authority on the point, the general rule is stated to be that "jurisdiction of a declaratory-judgment action will not be entertained if there is pending, at the time of the commencement of the declaratory action, another action or proceeding to which the same persons are parties, in which are involved and may be adjudicated the same identical issues that are involved in the declaratory action. (This rule is sometimes predicated on the power of the court, as a matter of judicial discretion, to refuse to entertain jurisdiction of the declaratory action, and sometimes on complete lack of jurisdiction.)" See also in this connection, Borchard, Declaratory Judgments (2d ed.), p. 657.

*By the Court.*—The order of the circuit court is modified to order the following declaratory judgment and to delete such portions of the order as deny such a declaration: The provisions of sec. 201.03 (9), Stats., are applicable to and binding upon mutual insurance companies in existence at the time of its enactment and are applicable specifically to plaintiff. In all other respects the order is affirmed.