PELLA FARMERS MUTUAL INSURANCE COMPANY, Appellant, v. HARTLAND RICHMOND TOWN INSURANCE COMPANY, Respondent.*

*October 27, 1964—January 5, 1965.*

* Motion for rehearing denied, with costs, on March 2, 1965.

For the appellant there was a brief and oral argument by *H. E. Koehler* of Shawano.

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

Briefs *amici curiae* were filed by *Charne & Tehan* of Milwaukee, and by *George Thompson,* attorney general, and *E. Weston Wood,* assistant attorney general, for Charles Manson, commissioner of insurance.

FAIRCHILD, J. It is clear that the agreement for re-insurance did not create a liability for assessment unless such liability arises by statute under all such agreements. The question is whether ch. 202, Stats., imposes such liability. Is ch. 202 to be construed so as to require that when a town

mutual which reinsures risks of another company under sec. 202.07 makes an assessment under sec. 202.11, it must levy its assessment against the reinsured company as well as against those whose property it directly insures? No part of ch. 202 deals specifically and expressly with the problem.

A town mutual is formed by a group of resident owners of insurable property in a particular county.[1] The board issues policies agreeing to pay its insured's loss occasioned by certain perils to property located within the authorized territory of the town mutual.[2] Every policyholder is a member of the company.[3] The board of directors is elected at annual meetings.[4] The company may classify property or risks under different rates. A schedule of rates must be filed with the commissioner of insurance, although the statutes do not require approval.[5] Reserves may, but are not required to be, established.[6]

When the amount of any loss shall exceed the funds on hand, the board "shall levy an assessment which shall be at the same rate upon all property insured at the time of the loss."[7] The company may, however, classify risks for assessment, and when so classified, the rate of assessment need not be uniform.[8] Assessments constitute personal liabilities of the members.[9]

A group of nine or more town mutuals may form a reinsurance corporation.[10] Any town mutual may apply to it for reinsurance of risks and become a member of the corpora-

---

[1] Sec. 202.01 (1), Stats.
[2] Secs. 202.06 and 202.08, Stats.
[3] Sec. 202.09, Stats.
[4] Sec. 202.01 (2), Stats.
[5] Sec. 202.08 (2), Stats.
[6] Sec. 202.11 (1), Stats.
[7] Sec. 202.11 (1), Stats.
[8] Sec. 202.08 (2), Stats.
[9] Sec. 202.12, Stats.
[10] Sec. 202.15, Stats.

tion.[11] Sec. 202.17, Stats., provides that the provisions of ch. 202 "shall, so far as applicable, apply to the . . . powers, rights, privileges, duties and burdens of such reinsurance corporation and the members thereof, and the relations of such members with each other and with such reinsurance corporation. . . ."

Sec. 202.07, Stats., authorizes one town mutual to reinsure a portion of any risk of another company or to effect reinsurance of its own risks by another. It reads:

"The board of directors may at anytime authorize the officers to cede reinsurance to any other responsible company and may assume as a reinsurer alone or in conjunction with other insurers a portion of any risk of any other company provided the risk is located in the state of Wisconsin and is of a kind which it may insure direct."

Nowhere does the statute expressly make a reinsured company a member of a reinsurer town mutual, nor provide that a reinsured company shall be subject to assessment. If that be the law, it is reached only by construction.

Ch. 202, Stats., deals with three types of situations where one is insured by another: (1) A town mutual agrees to indemnify a property owner for loss of property; (2) a town mutual agrees to indemnify another company for losses on risks of the latter; (3) a reinsurance corporation agrees to indemnify one of its member town mutuals for losses on risks of the latter. In situation (1), the statute explicitly provides that the insured property owner is a member of the town mutual and is subject to assessment. In situation (3), the statute explicitly provides that the reinsured town mutual is a member of the reinsurance corporation, and quite clearly makes it subject to assessment. In situation (2), however, a conclusion that a reinsured company is a member of a reinsurer town mutual, and sub-

---

[11] Secs. 202.16, 202.17, and 202.18, Stats.

ject to assessment by it can only be reached by according great importance to keeping the insurance contract relationship between the parties in situation (2) consistent with the relationship in situations (1) and (3).

The argument can well be made, essentially one of strict construction, that only a member is liable to assessment; that one must be a "policyholder" to be a member; that the "policy" referred to is the contract in situation (1) and not the contract of reinsurance in situation (2); that the "property insured" against which assessments are to be levied means property owned by the insured and does not include a reinsured portion of a risk of another insurer; and that one must imply from the presence of express provisions making reinsured town mutuals members and subject to assessment in situation (3) and the absence of such provision in situation (2), that membership and assessability were not intended to exist in situation (2).

The countervailing argument is based on the nature of mutual insurance upon the assessment plan. Town mutuals are authorized to exact premiums in return for insurance, but such premiums may or may not provide funds sufficient to pay losses. When the funds collected prove insufficient to pay the losses incurred, the deficiency is made up by assessment of the members.

"Mutual insurance, as its name implies, exists where several persons have joined together for their united protection, each member contributing to a fund for the payment of the losses and expenses, the benefit or indemnity to accrue to any individual member, depending upon the existence of other persons holding similar contracts, the relationship between the members being a dual one, in that each member is in a sense both an insured and an insurer." [12]

"The generally accepted rule is that when a mutual company operates on the assessment plan, the liability of the

---

[12] 2 Couch, Insurance (2d ed.), p. 166, sec. 19.14.

members is limited only by the amount of the loss, and any attempt to limit arbitrarily the number and amount of assessments for which members are liable is ultra vires and void." [13]

Thus the premiums received by a town mutual for insurance are only the primary resource out of which losses are paid. The ultimate reservoir consists of the resources of its members. If the premiums charged do not produce sufficient funds to pay losses of one or more members, then all the members are obligated to provide additional funds sufficient to do so. But if the town mutual has reinsured risks of another company, and losses outrun the collection of premiums, is the entire deficiency to be made up by property-owner members, or is the reinsured company to share the burden? Are the property-owner members of the reinsurer town mutual to be the insurers of the risks of the reinsured company without the mutuality which applies among all insureds with respect to the ordinary risks?

It seems to us most logical and most in accord with the framework of ch. 202, Stats., that each reinsurance contract should be treated as an additional policy of insurance issued by the reinsurer town mutual, and the reinsured company as a member of the reinsurer, subject to assessment.

The history of ch. 202, Stats., has provided little help in resolving the question. It originated in ch. 344, Laws of 1876, entitled "An Act to codify and consolidate all laws in relation to town insurance companies." It became secs. 1927 to 1941, inclusive, R. S. 1878, and there have been a number of amendments and revisions. Express authority to reinsure risks, as reinsured and as reinsurer, first appeared in ch. 97, Laws of 1893, reading as follows:

"Any town insurance company, organized under the laws of this state, shall have the power, which may be exercised

---

[13] 2 Couch, Insurance (2d ed.), p. 221, sec. 19.82.

in its discretion, at its annual meeting or at a special meeting thereof, convened for that purpose, by a majority of the votes of such corporation cast in like manner as for the election of directors, to authorize its board of directors to effect reinsurance in some other town insurance company of this state, of any risks, amounting to, or exceeding the sum of five thousand dollars, taken by it, and to reinsure similar risks taken by any other such corporation."

The provisions for reinsurance corporations originated in ch. 130, Laws of 1909.

Ch. 344, Laws of 1876, provided, in sec. 12, that every person shall have one vote for each two hundred dollars for which he may be insured. This formula remained the same until ch. 165, Laws of 1911, authorized any town mutual to substitute a provision that each member have one vote. Since enactment of ch. 471, Laws of 1961, each member has one vote in every case.

Affidavits in the record show that Hartland also re-insured risks of Pella; that in 1961 Hartland levied an assessment; that in 1962 Hartland gave notice to Pella of such assessment, stating that this was done at the insistence of the insurance commissioner. Pella paid. Hartland and Pella have similar reinsurance contracts with three other town mutuals. The affidavits assert that the view that a reinsured town mutual was subject to assessment was first adopted by the insurance commissioner in 1961. Except for these affidavits, pertaining to the practice of five town mutuals, we have no information whether reinsurer town mutuals have levied assessments against reinsured town mutuals or not.

Our attention has been called to several reports of examinations of town mutuals, on file in the department of insurance, indicating that the department's examiners have questioned the validity of reinsurance agreements of town

mutuals which provide that the reinsured shall not be assessed by the reinsurer. These range in date from 1947 to 1960. We are not informed whether the records show any action taken with respect to such reports.

In 1943 the commissioner took the position in this court that a reinsured mutual insurance company (not a town mutual) was a member of and liable to assessment by the reinsurer mutual insurance company.[14] The point was not decided. In the case now before us, the attorney general has submitted a brief on behalf of the commissioner of insurance as *amicus curiae,* supporting the proposition that a reinsured town mutual is a member of a reinsurer town mutual, and subject to assessment.

Under these facts, neither a long-standing administrative interpretation by the insurance commissioner nor a substantially universal practice by the town mutuals is sufficiently established to be very persuasive.

We have examined the statutes of other states and find that a number of them deal specifically with the question whether a reinsured company is a member of a reinsurer mutual. It is difficult to generalize because of the variations in the statutes, and our analysis necessarily could not be exhaustive. It appears, however, that 26 states, including Wisconsin, have statutes regulating or authorizing mutual insurance companies which are or may be limited to a particular locality.[15] Six of them have statutes expressly or by clear implication dealing with the questions before us in this case. Four of them provide that a reinsured "local"

---

[14] *Cheese Makers Mut. Casualty Co. v. Duel* (1943), 243 Wis. 406, 10 N. W. (2d) 125.

[15] Alabama, California, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Mexico, New York, North Dakota, Oklahoma, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, and Wyoming.

mutual is not a member of the reinsurer "local" mutual.[16] Two provide that such reinsured is a member of such reinsurer.[17] It should be observed that although most jurisdictions have statutes pertaining to mutual insurers of various types which are not limited in territory, 25 have provisions that a reinsured company is not a member of a mutual which reinsures it.[18]

There appear to be few court decisions which bear upon the problem.

The supreme court of Nebraska decided that in the absence of express statutory authority, a somewhat similar "local" mutual could not be a reinsurer. In so deciding, the court pointed out that reinsurance is a contract to indemnify an insurer for a loss it may sustain on its contract to insure another, and not a contract to insure the owner of property against its loss by casualty.[19] The supreme court of Missouri reached the opposite result.[20]

[16] Idaho Code, sec. 41–3119; Ill. Rev. Stats. sec. 204.9; Mich. Stats. Anno., sec. 24.16824; Va. Code Anno., sec. 38.1–675.

[17] N. Y. Insurance Law, sec. 365; Tenn. Code Anno., sec. 56–2109.

[18] Ariz. Rev. Stats. Anno., sec. 20–715; Ark. Stats. Anno., sec. 66–4216; Cal. Insurance Code, sec. 4013; Fla. Stats. Anno., sec. 628.301; Ga. Code Anno., sec. 56–1516; Hawaii Rev. Laws, sec. 181–178; Idaho Code Anno., sec. 41–2829; Ill. Rev. Stats., sec. 73–671; Ky. Rev. Stats., sec. 304.171; Md. Code Anno., sec. 48A–257; Mass. Laws Anno., sec. 175:20; Mich. Stats. Anno., sec. 24.–1632; Mont. Rev. Code, sec. 40–4714; N. M. Stats. Anno., sec. 58–18–19; Okla. Stats. Anno., sec. 36–2115; Or. Rev. Stats., secs. 739.165, 736.005 (2), 744.020; P. R. Laws Anno., sec. 26–2909; R. I. Gen. Laws, sec. 27–5–13; S. C. Code, sec. 37–372; S. D. Code, sec. 31.2916; Vernon's Tex. Stats. Anno., sec. 15.17; Utah Code Anno., sec. 31–9–11; Va. Code, sec. 38–1–26; Wash. Rev. Code, sec. 48.09.110; W. Va. Code, sec. 3352. And see Kan. Gen. Stats., sec. 40–15–18.

[19] *Allison v. Fidelity Mut. Fire Ins. Co.* (1908), 81 Neb. 494, 116 N. W. 274.

[20] *Cass County v. Mercantile Town Mut. Ins. Co.* (1905), 188 Mo. 1, 86 S. W. 237.

It has been held that although in general the word "policy-holder" may or may not include a holder of a reinsurance contract, it did so in a particular instrument under the circumstances before the court.[21] It has also been held that reinsurance contracts are not contracts of insurance and that one who procured a reinsurance contract for an insurance company had not earned a commission promised for procuring an insurance contract.[22]

A New York trial court decided many years ago that under a similar New York statute, the reinsured risks should be counted as part of the "insured property" of the reinsurer town co-operative insurance corporation in determining whether the reinsurer had enough insurance in force to be qualified to extend its territory.[23] The court pointed out that:

". . . it would necessarily follow that the company obtaining such reinsurance would become thereby a member of the indemnifying co-operative company and subject to pro rata liability for assessments during the life of the contract as other members, because by [the applicable statute] the assessments must be laid 'upon all the property at that time insured.' "

The *Skaneateles* decision has been cited as authority for the proposition that in the absence of statutory prohibition one mutual company may reinsure property insured by another and the reinsured company becomes a member of the reinsurer company.[24] A New York statute, enacted after the

[21] *Maurer v. International Re-Insurance Corp.* (1952), 32 Del. Ch. 447, 86 Atl. (2d) 360, 365.

[22] *Stradley v. Southwestern Life Ins. Co.* (Tex. Civ. App. 1960), 341 S. W. (2d) 195.

[23] *Skaneateles Paper Co. v. American Underwriters Fire Ins. Co.* (1908), 61 Misc. 457, 114 N. Y. Supp. 200, 204.

[24] 44 C. J. S., Insurance, p. 655, sec. 108 b, and 46 C. J. S., Insurance, p. 198, sec. 1221. See 2 Couch, Insurance (2d ed.), p. 224, sec. 19.85.

*Skaneateles* decision, recognizes that reinsured insurers are members of the co-operative which reinsures them, and authorizes assessment of them as a separate class.[25]

In 1928, the attorney general of Minnesota stated, under a statute similar to the Wisconsin statute, that in his opinion a mutual fire insurance company may reinsure a portion of its risk in another mutual company without becoming a member of the reinsurer and subject to the same assessment liability as a regular policyholder.[26]

The question is extremely close. The legislature originally authorized the town mutuals to insure owners of property, and specifically provided that all insureds would be members, would be subject to assessment, and, in essence, the ultimate insurers of each other and themselves. Later, the legislature authorized the town mutuals to issue a different type of insurance, *i.e.,* reinsurance of risks, but never specifically provided that all such insureds would be members, would be subject to assessment, and would join all other insureds as the ultimate insurers of each other and themselves. The learned county court correctly perceived that some of the statutory language is awkward if applied to reinsureds as policyholders and members.

To hold, however, that the reinsureds are not members would place this type of insurance upon an entirely different footing from the direct type of insurance originally authorized. As to reinsurance, it would not be true that the insured is also an insurer, and only the property-owner members would be the ultimate insurers of the reinsureds. We are persuaded that a construction that the reinsureds are members and subject to assessment is more consonant with the

---

[25] McKinney's Consol. Laws of New York, Book 27, sec. 365.

[26] Op. Atty. Gen., 249–A–16, Dec. 7, 1928, noted in Minn. Stat. Anno., sec. 66.01. See, also 863 Tex. Op. Atty. Gen. (1949), 36.

statutory pattern of unlimited mutuality which was fundamental to the town mutuals as originally authorized.

". . . A statute should be construed to give effect to its 'leading idea and the whole brought into harmony therewith if reasonably practicable.' " [27]

"The statute is to be examined first to discover the legislative purpose, and when that purpose is discovered it is to be so construed as to effect the evident purpose of the legislature if the language admits of that construction." [28]

The judgment appealed from rested upon the conclusion that the statute does not require assessment. Since we reach a conclusion different from that of the learned county court, further proceedings will be required to resolve other issues between the parties.

*By the Court.*—Judgment reversed, cause remanded for further proceedings.

WILKIE, J. (*dissenting*). I agree with the majority that liability for the disputed assessment against the respondent town mutual insurance company must arise, if at all, from the provisions of ch. 202, Stats. I do not quarrel with the majority's recital of the factors to be considered in arriving at its conclusion as to what the legislature intended. I simply disagree with the majority's conclusion.

In my opinion the legislature did not intend to treat a reinsured town mutual insurance company (ceding insurance under a reinsurance agreement) in the same manner as a regular town mutual policyholder of the reinsuring town mutual insurance company. If the legislature intended to

[27] *McCarthy v. Steinkellner* (1937), 223 Wis. 605, 615, 270 N. W. 551, 271 N. W. 374.

[28] *Beckman v. Bemis-Hooper-Hays Co.* (1933), 212 Wis. 565, 571, 250 N. W. 420.

provide for an assessment against the reinsured town mutual on the basis of the amount of the risk reinsured, as in the case of an assessment against a policyholder, it could have done so and until the legislature has expressly so provided there is no reason why our court should so construe the statutes.

The legislature knew the difference between fire insurance policies involved in assessments and contracts of reinsurance which are essentially liability insurance protecting the liability, in whole or in part, of the original insurer under its fire policies.

As a result of the majority decision, Pella may assess its policyholders on the full amount of insurance on its policies and keep the full proceeds although its net retention is less. It also may add to that base the amount of liability of Hartland as insurer on the Hartland policies Pella accepted under the reinsurance contract. Thus, Pella's base for the assessment is not just 100 percent of the amount insured under its policies, but that amount plus the amount of insurance assumed under its reinsurance contracts. In my opinion no such result was intended by the legislature.

For these reasons I would affirm.

I am authorized to state that Mr. Justice HALLOWS and Mr. Justice GORDON join in this opinion.