FRED A. RISSER, President State Senate
You have requested an interpretation of sec. 32.19(4m)(b), Stats., created by ch. 221, Laws of 1979, relating to replacement payments for displaced tenants. You ask whether a tenant who rents or leases a new parcel of property in anticipation of displacement prior to the service of the jurisdictional offer and who is subsequently displaced is entitled to receive replacement payments as provided by sec. 32.19(4m)(b), Stats.
For the purposes of responding to your question, I will assume the tenant in question is a displaced person as set out in sec.32.19(2)(c), *Page 121 
Stats., has resided on the premises for the required time period (sec. 32.19(4m)(b), Stats.), comparable replacement property is involved (sec. 32.19(2)(g), Stats.), and the tenant enters into the new lease because of the pending condemnation which actually takes place.
A "displaced person" for the purposes of sec. 32.19, Stats., is defined by sec. 32.19(2)(c), Stats., as:
 [A] ny person who moves from real property or who moves his personal property from real property . . . as a result of the acquisition of such real property, in whole or in part or subsequent to the issuance of a jurisdictional offer under this chapter, for public purposes or, as the result of the acquisition for public purposes of other real property on which such person conducts a business or farm operation . . . .
Thus, the statute clearly conditions the "displaced person" status upon movement from the property either after the date of acquisition or after the date of the jurisdictional offer. Persons who vacate the property before any of those dates are not eligible for relocation assistance.
It is noteworthy that the definition of a "displaced person" once covered persons who moved in anticipation of the acquisition. Section 32.19(2)(c), Stats. (1969), read in part: "`[D]isplaced person' means any person who moves from real property . . . as a result of the acquisition or reasonable expectation of acquisition of such real property in whole or in part, which is subsequently acquired in whole or in part for public purposes." However, ch. 103, Laws of 1971, deleted the "reasonable expectation" language and substituted "subsequent to the issuance of a jurisdictional offer" for the words "which is subsequently acquired in whole or in part."
Section 32.19(4m)(b), Stats., reads as follows:
 Tenant-occupied business or farm operation. In addition to amounts otherwise authorized by this chapter, the condemnor shall make a payment to any tenant displaced person who has owned and occupied the business operation, or owned the farm operation, for not less than one year prior to initiation of negotiations for the acquisition of the real property on which the business *Page 122 
or farm operation lies, and who actually rents or purchases a comparable replacement business or farm operation for the displaced business or farm operation within 2 years after the date the person vacates the acquired property.
Your inquiry asks whether the language of this statute requires that comparable replacement property be rented or purchased onlyafter the date on which the person vacates the premises?
It appears that the language "within 2 years after the date the person vacates the acquired property" is ambiguous in that reasonable persons could interpret it in more than one way. SeeAero Auto Parts Inc. v. Dept. of Transp., 78 Wis.2d 235, 238,253 N.W.2d 896 (1977). On the one hand, this provision could be interpreted as establishing a time period, two years after the person vacates, within which a person must rent or purchase replacement premises. On the other hand, it is also reasonable to interpret this language as creating a time beyond which the rent or purchase of replacement premises may not be taken without any attempt to fix a first point in time when such rent or purchase must be taken.
I believe that the meaning of the phrase "within 2 years after the date the person vacates the acquired property," although not without ambiguity, should not be interpreted to mean that the displaced tenant must wait until he actually vacates his old premises in order to secure replacement premises.
It is well recognized that the word "within" may be interpreted to mean not beyond, not later than, or a time beyond which an action shall not be taken. Adams v. Ingalls Packing Co.,30 Wash. 2d 282, 191 P.2d 699, 701 (1948); Jensen v. Nelson, 236 Iowa 569,19 N.W.2d 596, 598 (1945). It prescribes the end of the time period within which the action shall be taken, but it does not necessarily fix the beginning or the first point in time when the action may be taken. Reifke v. State, 296 N.Y.S.2d 667, 670,31 A.D.2d 67 (1968).
I believe a fair and reasonable interpretation of the phrase "within 2 years after the date the person vacates the acquired property" intends to fix only the terminus ad quem, the limit beyond which the *Page 123 
action may not be taken, and does not fix or set the terminus aquo, or the first point in time. See Davies v. Miller, 130 U.S. 284
(1889).
In construing this ambiguity, I find the declaration of the legislative purpose to be persuasive, and to further support the interpretation which fixes only the terminus ad quem, a time limit beyond which the action may not be taken. See State ex rel.Harvey v. Morgan, 30 Wis.2d 1, 10, 139 N.W.2d 585 (1966).
Moreover, the cardinal rule of statutory construction is that the purpose of the whole act will be sought and favored over a construction which would defeat the manifest object of the act.See State ex rel. State Public Defender v. Percy, 97 Wis.2d 627,635, 294 N.W.2d 528 (Ct.App. 1980). The Legislature has clearly revealed its purpose in enacting section 32.19 of the Relocation Act, which reads in part as follows:
 (1) The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired and other losses hereinafter described and suffered as the result of programs designed for the benefit of the public as a whole; . . . payment of such relocation assistance and assistance in the acquisition of replacement housing are proper costs of the construction of public improvements.
Thus, it has been found to be in the public interest that persons who are displaced by any public project be fairly compensated for the loss of their property and those relocation expenses specifically enumerated in secs. 32.19-32.195, Stats.; 63 Op. Att'y Gen. 201, 202 (1974). Further, because this is a remedial statute, I believe it is to be liberally construed so as to do justice to the legislative intent and to effect the evident purpose of the Legislature. See Pella F. Mut. Ins. Co. v.Hartland R. T. Ins. Co., 26 Wis.2d 29, 41, 132 N.W.2d 225 (1965) and Holl v. Merrill, 251 Wis. 203, 209, 28 N.W.2d 363 (1947).
I conclude that if this provision of the statute is interpreted to permit reimbursement only for a lease entered into after the date the person vacates the acquired property, the result would frustrate the legislative declaration of purpose which is to fairly compensate persons *Page 124 
displaced by public projects. Under such an interpretation, a person might suffer serious financial losses from the date the tenant vacates the property until such time as he is able to secure a new lease. Since there is no provision in the statute for reimbursement of any of these interim expenses, I do not believe the Legislature would intend such a result as it is clearly contrary to its declared purpose.
Thus, it is my opinion that a displaced person is entitled to relocation assistance benefits if he rents or purchases replacement premises before he actually vacates the premises provided he satisfies the other criteria set forth in ch. 32, Stats.
BCL:JRS