DANIEL L. LAROCQUE, District Attorney Marathon County
I
You ask whether a physician, who is informed by a patient, for purposes of diagnosis or treatment, of matters relating to a homicide, may disclose such confidential communication to appropriate authorities, without consent of the patient, prior to commencement of criminal proceedings.
Generally, the public is entitled to, and may compel disclosure of, every man's evidence. VIII Wigmore on Evidence (McNaughton Rev. 1961), secs. 2285, 2290, pp. 527, 543; 97 C.J.S., Witnesses, sec. 252, p. 740.
Contemporaneous with recognition, in the sixteenth century, of the right of the public to disclosure, however, an exception appeared for communications between attorney and client. Wigmoreon Evidence, supra, sec. 2290, p. 542. Somewhat later a privilege for communications between husband and wife evolved in the common law. Id., sec. 2333, p. 644.
Any privilege with respect to communications between physician and patient, though, is purely a product of statute. Platz, TheCompetency of Attorneys and Physicians to Disclose PrivilegedCommunications in Testamentary Cases, 1939 Wis. L. Rev. 339, 353. At common law information acquired by a physician in attending a patient was not privileged; the physician was at liberty to disclose it in or out of court, whatever effect the disclosure would have on the rights, reputation or feelings of his patient.Boyle v. Northwestern Mutual Relief Ass'n. (1897), 95 Wis. 312,320, 70 N.W. 351. Also see Wigmore on Evidence, supra, sec. 2380, p. 818. There is no constitutional physician-patient privilege. See Bremer v. State (1973), 18 Md. App. 291, 307 A.2d 503, 529, cert. den. 415 U.S. 930.
Wisconsin, in 1839, was one of the first jurisdictions legislatively to establish a physician-patient privilege. Sanborn, Physician's Privilege in Wisconsin, 1 Wis. L. Rev. 141, 111 (1921). *Page 84 
The contemporary descendant of the original rule, sec. 905.04
(2), Stats., Wisconsin Rules of Evidence, provides that:
 "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of his physical, mental or emotional condition, among himself, his physician, or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician."
Unfortunately, statutes prior to the present one, while expressing exceptions to applicability of the privilege created, failed facially to indicate the circumstances in which it did apply, the only indication of that in the statute books being the title heading "Provisions Common to Actions and Proceedings in All Courts" preceding statement of the privilege. E.g., Title XLIII, Stats. (1971).
Perhaps it was thought by the legislature unnecessary to address the topic of initial applicability because, generally, it is well established that the rule of privileged communications, including those between physician and patient, is not a principle of substantive law, but merely a rule of evidence. See 97 C.J.S.,Witnesses, secs. 252, 293, PP. 739. 826, 827. Also see 58 Am.Jur., Witnesses, sec. 432, P. 245. Cf. Wigmore on Evidence,supra, sec. 2285, PP. 527, 528.
Omission of such specificity, though, undoubtedly caused misunderstanding.[1]
In considering a question somewhat similar to that asked me, a predecessor concluded that the physician-patient privilege was absolute, except as specifically provided otherwise, so that information obtained by a physician from his patient could not be *Page 85 
disclosed prior to commencement of enumerated excepted judicial proceedings. 17 OAG 504 (1928).
That opinion, in retrospect, erred, not only in failing to consider the legal and historical context of the privilege, but in ignoring a direct decision of the Wisconsin supreme court stating the limits of the Wisconsin law.
In Boyle v. NorthWestern Mutual Relief Ass'n., supra, 321, 322, the court made plain that:
 "The disclosure by a physician of information acquired in his professional character, in attending on a patient, where not made in the course of his professional duty, is a plain violation of professional propriety, but the law does not prohibit such disclosure in his general intercourse. The statute relates only to his giving testimony in court in relation to information thus acquired . . ."
A series of later cases has confirmed that the purpose of the privilege under discussion is prevention of disclosure by a physician on the witness stand. E.g., Wilkins v. Durand (1970),47 Wis.2d 527, 538, 177 N.W.2d 892, and cases cited
The question which arose in Wilkins was whether the privilege embodied in the immediate ancestor of sec. 905.04 (2), Stats., could "be exercised so as to foreclose discovery as well as admission into evidence" of portions of a patients medical record. Ibid. Answering in the negative the supreme, court ordered that:
 ". . . the entire record should be made available and the ruling on privilege reserved for trial." Id., 540.
It thus could be discerned from the cases, if not from the face of older statutes, that the physician-patient privilege was a provision applying to actions and proceedings in court
The deficiency of previous statements of the privilege, however, happily has been supplied in the Wisconsin rules of evidence where it now is found.
Section 905.01, Stats., warns that no person has a privilege to refuse to disclose, or to prevent another from disclosing, any matter except as provided by, or inherent or implicit in, statute, court rule, or constitution. Section 911.01 (3), Stat., provides that the *Page 86 
privileges having their existence in the rules of evidence apply at all stages of all actions, cases, and proceedings. And secs.901.01 and 911.01 (1), Stats., limit the listed activities to those conducted in the courts of the state of Wisconsin.
Both decision and statute make plain, therefore, that communications between physician and patient are privileged only insofar as they might be made evidence at some stage of an action, case, or proceeding in state courts. And it is only in that instance that a patient peremptorily may prevent his physician from disclosing confidential communications.
The physician-patient privilege, then, does not prohibit a physician from disclosing confidential communications of a patient prior to, or outside of, evidentiary court proceedings.
This is not to say, though, that a physician always may disclose to police, out of court, a patient's confidential statements.
Quite apart from the testimonial physician-patient privilege, principles of professional conduct, in most circumstances, would prohibit disclosure.
Section 448.18 (1) (d), Stats., classes as unprofessional conduct, which could cause revocation of a license to practice medicine, willful betrayal of a professional secret.[2]
This societal prohibition of behavior is a substantive rule regulating the conduct of physicians, differing in kind from the testimonial privilege which permits patients to prevent evidentiary disclosures by their doctors.
No special definition of "professional secret" is provided in the statute. As a general rule, though, all words and phrases in Wisconsin laws are to be construed according to common usage. Sec. 990.01 (1), Stats.
The principles of medical ethics of the American Medical Association, which may be deemed to indicate a consensus in the medical community, provide, in sec. 9, that as a matter of professional ethics: *Page 87 
 "A physician may not reveal the confidences entrusted to him in the course of medical attendance, or the deficiencies he may observe in the character of patients, unless he is required to do so by law or unless it becomes necessary in order to protect the welfare of the individual or of the community."
Several sister states having unprofessional conduct statutes similar to our own have construed them in conjunction with the A.M.A. principles of ethics to include confidential communications of a patient within the definition of "professional secret." See Horne v. Patton (Ala. 1973), 287 So.2d 824,828-830; Hammonds v. Aetna Casualty and Surety Co. (N.D. Ohio 1965), 243 F. Supp. 793, 797, 798; Barber v. Time, Inc. (Mo. 1942), 159 S.W.2d 291, 295; Simonsen v. Swenson (1920), 104 Neb. 224,177 N.W. 831, 832, 9 A.L.R. 1250. Also see Anno.,Doctor Disclosure of Information, 20 A.L.R. 3d 1109, sec. 5, p. 1118.
Although decided prior to enactment of this state's law, Boylev. Northwestern Mutual Relief Ass'n., supra. 321, 322, as was noted earlier, declared that professional propriety is violated by a physician's disclosure, outside the course of professional duty, of information acquired in his professional character in attending a patient.
It seems safe to say, therefore, that professional secrets, within the meaning of sec. 448.18 (1) (d), Stats., include confidences entrusted to physicians in the course of medical attendance.
Disclosure of such confidences, however, is not equated automatically with willful betrayal of a professional secret.
The A.M.A. principles of medical ethics except from the category of unprofessional conduct revelations required by law or necessary to protect the welfare of the individual or the community.[3] Accord, Horne v. Patton, supra. 830. Also see Anno., Doctor-Disclosure of Information, supra. sec. 6 [a], pp. 1118-1120. Boyle v. Northwestern Mutual Relief Ass'n., supra, seems in *Page 88 
agreement, stamping the stigma of impropriety only on disclosures not made in the course of professional duty. Id., 321, 322.
Closely in point on the question here is Tarasoff v. Regents ofthe University of California (1974), 118 Cal. Rptr. 129, 529 P.2d 553.
In that case the court adopted a balancing approach to safeguarding the confidential character of psychotherapeutic communication, weighing the public interest in supporting effective treatment of mental illness and in protecting the right of patients to privacy against another public interest, that of safety from violent assault. 529 P.2d at 560.
Noting decisions of diverse jurisdictions holding that the relationship of a doctor to his patient is sufficient to support a duty to use reasonable care to warn third persons of dangers emanating from the patient's illness, the court reasoned:
 "As the present case illustrates, a patient with severe mental illness and dangerous proclivities may, in a given case, present a danger as serious and as foreseeable as does the carrier of a contagious disease or the driver whose condition or medication affects his ability to drive safely." Id., 559.
It was concluded that, if the psychotherapist has reasonable cause to believe that a patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another, and that disclosure of his communication is necessary to prevent the threatened danger, revelation of a confidential communication is not a breach of trust or violation of professional ethics. Id., 561.
Moreover, the court concluded:
 ". . . that a doctor or a psychotherapist treating a mentally ill patient, just as a doctor treating physical illness, bears a duty to use reasonable care to give threatened persons such warnings as are essential to avert foreseeable danger arising from his patient's condition or treatment." Id., 559. (Emphasis added.)
 ". . . [T]he public policy favoring protection of the confidential character of patient-psychotherapist communications must yield in instances in which disclosure is *Page 89 
essential to avert danger to others. The protective privilege ends where the public peril begins." Id., 561.
The reasoning in Tarasoff is persuasive, and the result in conformity with what appears to be the trend of analogous cases. See Anno., Doctor-Disclosure of Information, supra. Also seeBoyle v. Northwestern Mutual Relief Ass'n., supra, 321, 322.
I must conclude, therefore, that a physician not only may, but may have a duty to, disclose to police, prior to commencement of criminal proceedings, a confidential communication of a patient, when he has reason to believe that the patient is in such physical or mental condition as to be dangerous to himself, or to the person or property of another, and that disclosure of his communication is necessary to prevent the threatened danger
Certainly a physician should not be encouraged routinely to reveal matters to police. But he must make decisions with respect to disclosure involving a high order of expertise and judgment, weighing against the danger of violence the harm to the patient that might result from revelation. Tarasoff v. Regents of theUniversity of California, supra, 560. Within that broad range in which professional opinion and judgment may differ respecting the proper course of action, the physician is free to exercise his own best judgment. Ibid.
II
Additionally, you request my opinion interpreting sec. 905.04
(4) (d), Stats., Wisconsin Rules of Evidence, which provides that:
 "There is no [testimonial] privilege in trials for homicide when the disclosure relates directly to the facts or immediate circumstances of the homicide." (Emphasis added.)
You ask, considering that the physician-patient privilege applies at all stages of all actions, cases, and proceedings (see sec. 911.01 (3), Stats.), how the term "trial" is defined in the context of this exception to the privilege.
Section 270.06, Stats., defines a "trial" as "the judicial examination of the issues between the parties, whether they be issues of law or fact." This provision has been interpreted as excluding discovery proceedings undertaken before the pleadings have been completed. Cousins v. Schroeder (1919), 169 Wis. 438, *Page 90 
440-441, 172 N.W. 953. In that case, the court held that the banking commissioner properly refused to produce certain records in his custody for discovery which by statute he was required to keep confidential "except when called as a witness in any criminal proceeding or trial in a court of justice."
More recently, in Strong v. State (1967), 36 Wis.2d 324, 327,152 N.W.2d 890, the Wisconsin Supreme Court adopted the definition of the term "trial" in Berness v. State (1935),263 Ala. 641, 646, 83 So.2d 613, as "`proceedings in open court, after pleadings are finished, down to and including rendition of the verdict.'" On the basis of this definition, the court excluded the sentencing proceeding from the definition of "trial." Furthermore, the court has held that a preliminary hearing in a criminal action is not part of the trial. State exrel. Kennon v. Hanley (1946), 249 Wis. 399, 401, 24 N.W.2d 683.
As a general rule, all privileges, including the physician-patient privilege, apply "at all stages of all actions, cases and proceedings; . . ." Sec. 911.01 (3), Stats. The provisions of sec. 905.04 (4) (d), Stats., barring the physician-patient privilege in "trials for homicide" is an exception from this rule. It is clear from a comparison of sec.905.04 (4) (d), Stats., with sec. 911.01 (3), Stats., that this exception does not apply coextensively with the privilege. Furthermore, the term "trial" in both civil and criminal actions has been limited by the supreme court to the ultimate resolution of all issues, legal and factual, in dispute. Accordingly, sec.905.04 (4) (d), Stats., must be construed as limited only to that stage of the criminal action during which there is a judicial examination and resolution of all issues culminating in a jury verdict or findings of fact. Strong v. State, supra, at 327.
BCL:TJB
[1] As recently as last year the California supreme court considered it necessary to state.
"It is perhaps pertinent to remember the obvious, namely that the physician-patient privilege is a rule of evidence concerning the admissibility of evidence in court and is not a substantive rule regulating the conduct of physicians." Rudnick v. SuperiorCourt of Kern County (1974) 114 Cal. Rptr. 603, 523 P.2d 643. 650 fn. 10.
[2] In some jurisdictions willful betrayal of a professional secret has been held to create a civil cause of action for damages See Anno., Doctor-Disclosure of Information, 20 A.L.R. 3d 1109.
[3] It should be noted that this opinion deals only with one exception to the substantive rule of professional secrecy. It in no was should be considered exclusive or as foreclosing other exceptions, such as disclosures required, or perhaps permitted, by law. See, e.g. secs. 48.981, 905.04 (4) (e). Stats., requiring disclosure in certain cases of child abuse. *Page 91