PAMELA J. KAHLER, Corporation Counsel Dunn County
You ask whether suspected child abuse may be reported under section 48.981 (2), Stats., when the abuser, rather than the victim, is seen in the course of professional duties. The situation leading to your question is one where an individual seeking professional help for mental or emotional problems or an individual taken into custody under chapter 51 voluntarily and without solicitation informs a medical or mental health professional of incidents where he or she has abused a child in some manner.
Under section 48.981 (2), certain individuals, including medical and mental health professionals,
 having reasonable cause to suspect that a child seen in the course of professional duties has been abused or neglected or having reason to believe that a child seen in the course of professional duties has been threatened with abuse or neglect and that abuse or neglect of the child will occur shall report as provided in sub. (3).
This passage mandates reporting by those individuals if child abuse is suspected when the child is seen in the course of professional duties.
Subsection (2) further provides that "[a]ny other person, including an attorney, having reason to suspect that a child has been abused or neglected or reason to believe that a child has been threatened with abuse or neglect and that abuse or neglect of the child will occur may make such a report." While the earlier passage mandates reporting where the suspicion of child abuse arises only after the child has been seen, there is no such limitation in the later provision.
In State v. Campbell, 102 Wis.2d 243, 253, 306 N.W.2d 272
(1981), the court observed: "The reporting requirement [under sec. *Page 40 48.981 (2)] is exacted, on pain of criminal penalty, of persons in a position to view the effects of physical abuse, but not necessarily their cause. It is logical to restrict the exacted duty to readily observable effects creating `reasonable cause to suspect' child abuse."
It is my opinion that reporting is mandatory where the professional has reasonable cause to suspect child abuse after actually seeing the child in a professional capacity. It further is my opinion that any person, including a professional, may, but is not required to, report suspected child abuse regardless of the source of that suspicion. As the court pointed out in State v. Campbell, mandatory reporting is the duty of only those persons who actually see the child professionally. The duties of the professional end at that point.
Under section 51.30 (4) all mental health treatment records are confidential and privileged to the subject individual except as otherwise provided such as under section 905.04. Section 905.04
(4) contains exceptions to the physician-patient privilege but none of these privileges apply to this situation. Section 51.30
(9) provides for both criminal penalties and private actions against persons who violate these confidentiality provisions.
There is an inevitable clash between two important principles and goals. On the one hand, there is the desire or need to report child abuse or neglect in critical situations in order to assure that appropriate protective services are provided to these abused and neglected children. At the same time, however, there are equally important legal and practical reasons for preserving the confidentiality of all treatment records and protecting the traditional doctor-patient relationship. If at all possible, the ultimate goal is to preserve the vitality of each of these purposes.
In 68 Op. Att'y Gen. 342, 346 (1979), my predecessor concluded that harmonization of these same statutes under the mandatory reporting provisions jeopardizes no interest sought by section51.30 and fully implements section 48.981. As was there concluded, a contrary interpretation would defeat the purpose of section 48.981 to report child abuse or neglect in critical situations without serving any interest essential to section51.30.
The statutes were contemporaneously acted upon by the 1977 Legislature. Chs. 355 and 428, Laws of 1977. Under chapter 355, *Page 41 
the Legislature declared its liberal purpose with respect to child abuse and neglect as follows:
 It is the purpose of this act to protect the health and welfare of children by encouraging the reporting of suspected child abuse and child neglect in a manner which assures that appropriate protective services will be provided to abused and neglected children and that appropriate services will be offered to families of abused and neglected children in order to protect such children from further harm and to promote the well-being of the child in his or her home setting, whenever possible.
The Legislature expressly made the confidentiality provisions of section 51.30 (4)(a) subordinate to section 905.04. That section creates a physician-patient testimonial privilege but expressly exempts situations where the examination of an abused or injured child creates a reasonable ground for an opinion of the physician, registered nurse or chiropractor that the condition was other than accidentally caused or inflicted by another. Sec. 905.04 (4)(e), Stats.
The reports under section 48.981 themselves are confidential. Reports and records may be disclosed only to certain enumerated persons and under certain limited conditions. A person to whom a report or record is disclosed may not further disclose it except to the persons and for purposes specified. Sec. 48.981 (7)(e), Stats.
As observed in the 1979 opinion referred to above, the essential difference between the two sections concerns which public officials are entitled to the confidential information. Thus, the objective of section 51.30 to preserve the confidentiality of treatment records is hardly imperilled by disclosing certain aspects of those treatment records in child abuse or neglect situations to other appropriate public officials who themselves are under a duty to preserve the confidentiality. Although that opinion and your question present close and difficult questions, an attorney general's opinion is entitled to considerable weight when the Legislature amends the statute but makes no change in that part of the statute interpreted by the attorney general. Town of Vernon v. Waukesha County,99 Wis.2d 472, 479, 299 N.W.2d 593 (Ct.App. 1980). Both of these statutes have been amended in some respect since 1979 with no changes material to these questions.
In Tarasoff v. Regents of University of California, 118 Cal. Rptr. 129, 529 P.2d 553, 560 (1974), the court adopted a balancing approach *Page 42 
to safeguarding the confidential character of psychotherapeutic communication, weighing the public interest in supporting effective treatment of mental illness and in protecting the right of patients to privacy against another public interest, that of safety from violent assault. Noting decisions of diverse jurisdictions holding that the relationship of a doctor to his patient is sufficient to support a duty to use reasonable care to warn third persons of dangers emanating from the patient's illness, the court reasoned: "As the present case illustrates, a patient with severe mental illness and dangerous proclivities may, in a given case, present a danger as serious and as foreseeable as does the carrier of a contagious disease or the driver whose condition or medication affects his ability to drive safely." Tarasoff, 529 P.2d at 559.
The court concluded that revelation of a confidential communication is not a breach of trust or violation of professional ethics where the psychotherapist has reasonable cause to believe that a patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and disclosure of his communication is necessary to prevent the threatened danger. Tarasoff, 529 P.2d at 561. The court further concluded that a doctor or psychotherapist bears a duty to use reasonable care to give threatened persons such warnings as are essential to avert foreseeable danger arising from the patient's condition or treatment. Tarasoff, 529 P.2d at 559. In doing so, the court reasoned: "[T]he public policy favoring protection of the confidential character of patient-psychotherapist communications must yield in instances in which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins."Tarasoff, 529 P.2d at 561.
I find the reasoning of the court in Tarasoff to be persuasive on the issue of permissive reporting under section 48.981 (2). It is my opinion that a medical or mental health professional may report suspected child abuse under the permissive provisions of section 48.981 (3) when the abuser, rather than the victim, is seen in the course of professional duties. Unlike the court inTarasoff, I am unwilling to find a duty to so report under any circumstances. In deciding whether to report, the professional must weigh the danger of serious harm to the child against the harm to the patient that might result from revelation. Tarasoff, 529 P.2d at 560. However, within that broad range in which professional opinion and judgment *Page 43 
may differ respecting the proper course of action, the professional is free to exercise his or her own best judgment. 64 Op. Att'y Gen. 82, 89 (1975); see also, Annot., 20 A.L.R.3d 1109 (1968).
The Legislature has exonerated those making good faith reports from "any liability, civil or criminal." Sec. 48.981 (4), Stats. It is my opinion that this immunity from liability includes immunity from the damage and penalty provisions of section 51.30
(9) and (10). For the purpose of any proceeding, civil or criminal, this subsection establishes that the good faith of any person reporting under section 48.981 shall be presumed. 68 Op. Att'y Gen. at 346.
In any event, the rule of privileged communications, including those between physician and patient, is not a principle of substantive law but merely a rule of evidence. See 97 C.J.S.Witnesses §§ 252, 293 (1957). See also, 58 Am. Jur. Witnesses
§ 432 (1948). The nature of this testimonial privilege is thoroughly discussed in 64 Op. Att'y Gen. 82.
The purpose of the privilege is prevention of disclosure by a physician on the witness stand. See Wilkins v. Durand,47 Wis.2d 527, 538, 177 N.W.2d 892 (1970), and the cases cited therein. There is no constitutional physician-patient privilege. 64 Op. Att'y Gen. at 83.
It is only in a legal proceeding that a patient may peremptorily prevent his physician from disclosing confidential communications. The physician-patient privilege does not prohibit a physician from disclosing confidential communications outside of evidentiary court proceedings. 64 Op. Att'y Gen. at 85-86.
Quite apart from the testimonial physician-patient privilege, principles of professional conduct must be considered. For example, section 448.01 (11) defines "unprofessional conduct" as those acts or attempted acts of commission or omission defined as unprofessional conduct by the Medical Examining Board under the authority delegated to the board by statute. As your concern also pertains specifically to physicians, the principles of medical ethics of the American Medical Association historically have excepted from the category of unprofessional conduct revelations either required by law or necessary to protect the welfare of the individual or the community. In order to avoid needless repetition, I again invite your attention to the discussion of these considerations in the 1975 opinion. *Page 44 
It is my opinion that the Legislature intended to protect children by allowing physicians and other mental health professionals to report cases of suspected child abuse or neglect when a patient informs such persons of incidents where he or she has abused a child in some manner, and that section 51.30 does not act as a bar to such reporting. Although they obviously must be considered by the individual professional, the issues of possible unprofessional conduct and medical ethics are outside the scope of this opinion. From a strictly statutory standpoint, however, I conclude that those professionals who make good faith reports, especially where there is a serious and immediate threat to a child, are immune from any liability, civil or criminal, under section 48.981 (4), including the damage and penalty provisions of section 51.30 (9) and (10).
DJH:DPJ *Page 45