MILWAUKEE ACCEPTANCE CORPORATION, Appellant, v. DORE, Respondent.

*No. 349. Argued June 5, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 594.)

414

415

For the appellant there were briefs by *Charne, Glassner, Tehan, Clancy & Taitelman,* and oral argument by *Ronald S. Jacobs,* all of Milwaukee.

For the respondent there was a brief and oral argument by *Samuel J. Schrinsky* of Milwaukee.

BEILFUSS, J.    The controlling issue is whether Milwaukee Acceptance is a holder in due course of the note executed by Dore so as to be free from the defense Dore had against the payee, Auto Acceptance.

The defendant does not claim to the contrary and apparently concedes that the note was negotiable; that it was not past due when assigned; that it was regular in form and no defenses appeared upon its face; that Milwaukee Acceptance had whatever rights that A.I.C. had in the note; and that A.I.C. did not have actual knowledge of the so-called receipt for payment in full.[1]

The appellant, Milwaukee Acceptance, does contend that neither Auto Acceptance nor Harry Kaminsky were agents of A.I.C. at the time the note was executed and the receipt was given, and that A.I.C. was a holder in due course and not subject to any defense Dore might have had against the note while in the hands of Kaminsky or Auto Acceptance.

Dore contends that because the underlying agreement of 1964 specifically gave Auto Acceptance the right to make collections from the obligor or maker of the note, and because of the extensive number of transactions between Auto Acceptance and A.I.C. under the 1964 agreement, Auto Acceptance was the agent of A.I.C. at the time the note was executed and the receipt given.

---

[1] *See* generally ch. 403, Stats.

We do not read the 1964 agreement to give such authority to Auto Acceptance and conclude that Auto Acceptance was an agent for collection only after the notes had been assigned to A.I.C.

Auto Acceptance was not required to assign the note in question or any other obligation to A.I.C. In obtaining the obligations Auto Acceptance was not doing the business of A.I.C. Auto Acceptance could, or need not as it saw fit, assign the obligations it obtained to A.I.C. If Auto Acceptance did within its discretion assign obligations to A.I.C., then the assignments were pursuant to the terms of the underlying agreement of 1964. Auto Acceptance was not doing the business of A.I.C. when it obtained the obligations. It was only when the obligations were assigned that A.I.C. acquired any right or interest in them.

One of the provisions of the underlying agreement is that Auto Acceptance would ". . . warrant that: all Obligations and Collateral are genuine . . . and are and will continue free from defenses and offsets; all statements contained therein will be true, and unpaid balances shown therein correct; . . ." It cannot be said that Auto Acceptance was the agent of A.I.C. before the obligations were assigned. It is true that Auto Acceptance would become the agent of A.I.C. for the limited purpose of collection of the obligation after it was assigned, but this authorization in no way made Auto Acceptance A.I.C.'s agent prior to assignment.

In this instance Auto Acceptance specifically warranted to obligations assigned on October 20, 1965, to be genuine and not subject to defenses. At the time A.I.C. became the holder of the Dore note, Auto Acceptance was not an agent as to the Dore note. If Auto Acceptance would have accepted payments on the note (it did not), it would have become the agent of A.I.C. for any payments collected. A.I.C. became a holder in due course not subject to the defense Dore had against Auto Acceptance.

By assignment, Milwaukee Acceptance succeeded to the rights of A.I.C. and is entitled to judgment against Dore for the amount of the note.[2]

Even if Kaminsky had been an agent of A.I.C. at the time the note was executed and acquired it does not necessarily follow that his knowledge was imputed to A.I.C.

"**Where agent acts adversely.** While this exception has been questioned, and held not brought into play by the mere fact of a double agency, there is a well-established exception to the general rule that the knowledge of an agent is imputed to the principal where the agent has a motive or interest in concealing the facts from his principal or the conduct of the agent raises a clear presumption that he would not communicate the fact in controversy, as where, while acting nominally as agent, he is in reality acting for his own personal interest and adversely to the principal, or is acting fraudulently against the interests of his principal. Thus, an agent's knowledge of defenses to a bill or note transferred by him to his principal is not imputable to the principal, so as to prevent the latter from becoming a holder in due course, where, in the transaction in which the paper is transferred, the agent is acting for himself and the principal is represented by another or acts for himself. The exception to the general rule has frequently been applied where the holder was a bank or other corporation.

"However, the mere fact that an agent is acting independently and adversely to his principal does not in all cases preclude the imputation of the agent's knowledge to his principal. It is generally held that, even though an agent acts adversely to his principal or is engaged in committing an independent fraudulent act upon his own account, the principal is charged with the knowledge of the agent if the agent is the sole representative of the principal in the transaction and does not deal with the principal or any agent for him. This principle has been applied in cases in which an agent acted both for himself and his principal in a transaction by which a bill or note owned by the agent is transferred

---

[2] *See* sec. 403.602, Stats., and the commentary in 40B W. S. A. 403.602, Official UCC Comment, p. 346, and sec. 403.119, Stats., and commentary in 40B W. S. A. 403.119, pp. 76, 77, 78.

to his principal. But in some cases the exception to the general rule of imputation of an agent's knowledge to his principal where the agent acts adversely to or in fraud of his principal is applied even though such agent was the sole representative of his principal in the transaction. If the facts show that through all the dealings the third party knew or must have known by the very nature of the transaction that the principal could not have had knowledge of what was taking place he cannot be heard to charge the principal with knowledge. The sole actor doctrine has no application where the president of a 'one-man bank' induced the signing of a note payable to the bank on the representation that it was for accommodation only and without liability and used such note to cover up his embezzlement of funds from the bank." 11 Am. Jur. 2d, *Bills and Notes,* pp. 537–540, sec. 479.[3]

The respondent, Dore, also contends that the underlying agreement of 1964 provided for a pledge and not a sale. We do not reach this issue for the reason it was not alleged in the answer or in any way litigated in the trial court. We have determined not to consider the issue because it was raised for the first time upon appellate review.

We have not discussed any of the fraudulent aspects of the transactions. Neither party has alleged fraud in their pleadings or in any asserted fraud at the trial, although invited by the trial court to do so.

It is quite obvious that the execution of the note and the receipt was a sham. Dore permitted a note negotiable upon its face, with no indication of defect upon its face, to go into the stream of commerce. He may well have a cause of action against Auto Acceptance but he has no defense to the demand of the holder in due course of the note.

*By the Court.*—Judgment reversed, and remanded with directions to enter judgment pursuant to the demand of the complaint.

---

[3] *Also see Implement Credit Corp. v. Elsinger* (1954), 268 Wis. 143, 66 N. W. 2d 657, 67 N. W. 2d 873.