NORTHERN STATES POWER COMPANY, Appellant, v. TOWN OF HUNTER BOARD OF SUPERVISORS, Respondent.

*No. 11.  Argued January 4, 1973.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 878.)

120

For the appellant there were briefs by *Arnold P. Anderson* and *Carroll, Parroni, Postlewaite & Anderson,* all of Eau Claire, and oral argument by *Arnold P. Anderson.*

For the respondent there was a brief and oral argument by *Howard E. Hanson* of Hayward.

WILKIE, J. The issues presented on this appeal are:

1. Was the order of the Hunter town board, laying out the highway, an abuse of discretion because:

(a) it circumvents sec. 80.13 (5), Stats. 1969;

(b) the public good is not promoted; and there is no necessity for the highway?

2. Was the Hunter town board's order void in that:

(a) the jurisdictional requirements of sec. 80.07, Stats. 1969, were not followed; and

(b) the board minutes were inadequate?

*Abuse of discretion.*

NSP contends that the town board abused its discretion by ordering the highway to be laid out over NSP land because it is a circumvention of sec. 80.13 (5), Stats. 1969. This subsection provides:

"(5) Whenever land in any town *which is accessible,* or provided with a right of way to a public highway, is subdivided and the owner thereof sells and transfers a part thereof or sells a parcel of said land by metes and bounds, which part or parcel would otherwise be landlocked and shut out from all public highways other than a waterway, by reason of being surrounded on all sides by real estate belonging to other persons or by such real estate and by water without an adequate right of way to a public highway, the seller shall in so subdividing said land or a part thereof or in selling a parcel of said land by metes and bounds provide a cleared right of way at least 50 feet in width which shall be continuous from the highway to each part, parcel, lot or subdivision sold. In case the seller fails to do so the town board may, pursuant to proceedings under this section, lay out a road from such inaccessible land to the public highway over the remaining lands of the seller without assessment to the latter of damages or compensation therefor." (Emphasis added.)

The trial court construed "accessible" to mean "directly physically accessible." It ruled, therefore, that Wise's

land, which was later purchased by Petranek, was not "directly physically accessible" to a public highway, and that, as to this land, Wise did not come within the terms of sec. 80.13 (5), Stats.

The trial court was correct in this ruling. Throughout sub. (5) and the balance of this statute there is no doubt that the word "accessible" has a physical connotation.[2] The meaning of the statute is plain and unambiguous. Ambiguity exists where "a statute is capable of being understood by reasonably well-informed persons in two or more different senses."[3] The word "accessible" as used in sec. 80.13 (5) is plain and unambiguous in connoting direct physical contact. Since the wording of the statute here is plain and unambiguous we do not need to resort to secondary sources of legislative intent (such as the bill-drafting instructions when sec. 80.13 (5) was adopted in 1957).[4] There is no doubt that the Petranek parcel of land is not "accessible" within the contemplation of this statute.

Even assuming NSP is correct in its interpretation of the word "accessible" (as land near to but not necessarily directly physically accessible to a highway), NSP is incorrect in its further contention that Wise had a duty to barter with it, as the adjoining landowner, for a highway giving access to Wise's landlocked parcel; and also that the consequence of the failure to so barter is the foreclosure from ever receiving access from that parcel to a public highway. Sec. 80.13 (5), Stats., specifically provides for the consequences of a failure of a landowner to provide access to the public highway:

[2] *E.g., State ex rel. Guse v. Zubke* (1929), 200 Wis. 227, 227 N. W. 947.

[3] *Kindy v. Hayes* (1969), 44 Wis. 2d 301, 308, 171 N. W. 2d 324. *See also: Evangelical Alliance Mission v. Williams Bay* (1972), 54 Wis. 2d 187, 190, 194 N. W. 2d 646.

[4] *Department of Revenue v. Dziubek* (1970), 45 Wis. 2d 499, 504, 173 N. W. 2d 642.

". . . In case the seller fails to do so the town board may, pursuant to proceedings under this section, lay out a road from such inaccessible land to the public highway over the remaining lands of the seller without assessment to the latter of damages or compensation therefor."

As is obvious, this subsection does not contemplate the permanent foreclosure of landlocked property from access to a public highway where a seller neglects to provide such access to the land he subdivides. Sec. 80.13 (5), Stats., in no way bars the town from laying out the disputed highway to the Petranek parcel.

The NSP also argues that the town board abused its discretion by ordering a highway laid out over its property because there was no necessity for such highway and the action did not promote the public good. Sec. 80.13 (1), Stats., provides the conditions for the laying out of a highway to landlocked property such as the one disputed here:

"80.13 **Land excluded from highway.** (1) When any person shall present to the supervisors of any town an affidavit satisfying them that he is the owner or lessee of real estate (describing the same) within said town, and that the same is shut out from all public highways, other than a waterway, by being surrounded on all sides by real estate belonging to other persons, or by such real estate and by water, or that he is the owner or lessee of real estate (describing the same) and of a private way or road leading from said real estate to a public highway but that such road or way is too narrow, giving its width, to afford him reasonable access to and from said real estate to said public highway, that he is unable to purchase from any of said persons the right of way over or through the same to a public highway, or that he is unable to purchase from the owner or owners of land on either or both sides of his way or road land to make such way or road of sufficient width, or that it cannot be purchased except at an exorbitant price, stating the lowest price for which the same can be purchased by him, the said supervisors

shall appoint a time and place for hearing said matter, which hearing shall be after ten days and within thirty days of the receipt of said affidavit."

Sub. (3) provides authorization to lay out such a highway:

"(3) The supervisors shall meet at the appointed time and place and shall then in their discretion proceed to lay out such highway of not more than three nor less than two rods in width to such real estate, or shall add enough land to its width to make it not less than two nor more than three rods in width, and shall assess the damages to the owner or owners of the real estate over or through which the same shall be laid or from whom land shall be taken and the advantages to the applicant."

While the discretion granted to towns by this statute "is intended to be and probably generally is generously exercised to accommodate the landowner," it is clear that the right of a locked-in landowner to utilize this statute is not absolute.[5] Some necessity must exist in order to utilize the proceedings outlined in sec. 80.13, Stats.

"Highways laid out under sec. 80.13 of the statutes are ways of necessity established to give those who are entirely shut off from a public highway access to the same. Where applicants can reach a public highway by traveling over their own land, there is no such necessity as will warrant the taking of the land of another for that purpose."[6]

Under the statute the town is given discretion to lay out a highway where a property owner is landlocked on all sides. The concept of necessity is spelled out in the statute itself:

[5] *Backhausen v. Mayer* (1931), 204 Wis. 286, 289, 234 N. W. 904.

[6] *State ex rel. Guse v. Zubke, supra,* footnote 2, at pages 229, 230.

". . . by being surrounded on all sides by real estate belonging to other persons, or by such real estate and by water, . . . that he is unable to purchase from any of said persons the right of way over or through the same to a public highway, . . . or that it cannot be purchased except at an exorbitant price, . . ."[7]

NSP argues that there is no necessity to lay out a public highway in this case for three reasons: (1) Petranek's knowledge of the lack of an access when he purchased the property; (2) the land is not improved by such easement; and (3) the environmental commitment of NSP along with the Wisconsin department of natural resources to preserve the wilderness nature of this area is not advanced by giving such an access to Mr. Petranek. These considerations are simply irrelevant under sec. 80.13, Stats.

NSP also argues that the public good is not promoted by the Hunter town board's laying out a highway over NSP property.[8] The cases relied upon by NSP, however, are distinguishable because, as the town correctly points out, they both involved "side agreements" between the town boards and the landlocked property owners. It was held:

". . . Not only are such bargains void as against public policy, but official action based thereon ceases to be based solely upon the public welfare, and becomes tainted with some degree of private interest."[9]

Here there are no such private agreements apparent from the record. Moreover, private interests are not necessarily antithetical to the public good and interest. Illustrations of this principle are cases upholding the

---

[7] Sec. 80.13 (1), Stats.

[8] Citing *State ex rel. Dosch v. Ryan* (1906), 127 Wis. 599, 106 N. W. 1093; and *Larsen v. Town Supervisors* (1958), 5 Wis. 2d 240, 92 N. W. 2d 859.

[9] *State ex rel. Dosch v. Ryan, supra,* footnote 8, at page 601.

condemnation process [10] and public industrial financing of private industry.[11] So here, a public purpose is served by permitting a highway to be laid out over the NSP land. In adopting sec. 80.13, Stats., the legislature has presumably acted with this in mind.

## Legality of highway order.

Although the town board had the authority, in its discretion, to lay out the disputed access highway, its order laying out the highway is void because the town did not follow the precise procedure set out by the statutes and it, therefore, lost jurisdiction.

It lost jurisdiction when it ordered the amounts assessed as advantages to Petranek to be filed with the town treasurer within sixty days of such order. Although sec. 80.13 (4), Stats., does not prescribe a precise time limit as to when the applicant for the laying out of a highway, as here, must pay the amounts assessed to him as advantages, the only requirement is that such advantages be paid prior to the filing of the order laying out the highway.

Sec. 80.13 (4), Stats., provides as follows:

"(4) But the damages assessed by the supervisors shall in no case exceed the price stated in the affidavit of the applicant; upon laying out such highway, or in adding to the width of a former private way or road, they shall make and sign an order describing the same and file the same with the town clerk together with their award of damages, which order shall be recorded by said clerk; provided, that the amount assessed as advantages to the applicant shall be paid to the town treasurer before the order laying out such highway shall be filed."

[10] *Rehfuss v. La Crosse* (1942), 240 Wis. 619, 4 N. W. 2d 125.

[11] *State ex rel. Bowman v. Barczak* (1967), 34 Wis. 2d 57, 148 N. W. 2d 683.

However, sec. 80.07 (1), Stats., does require a town board's action affecting a highway to be filed in ten days. This statute provides as follows:

"(1) When the supervisors lay out, alter, widen or discontinue any highway they shall make and sign an order therefor, incorporating therein a description of the highway and cause survey thereof to be made when necessary. The order shall be filed and recorded in the office of the town clerk, who shall note in the record the time of recording. The order together with the award of damages shall be so filed within 10 days after the date fixed by their notice or adjournment for deciding upon the application. In case the supervisors fail to file the order and award within the 10 days aforesaid they shall be deemed to have decided against the application. . . ."

It has long been held that the failure to comply with this statute results in the town board's loss of jurisdiction.[12]

The determination of whether the Town of Hunter Board of Supervisors lost jurisdiction in the instant proceedings for failure to comply with sec. 80.07 (1), Stats., depends upon whether the ten-day time limitation therein stated may be properly applied to proceedings under sec. 80.13, which contains no such time limitation.

The two statutes are intended to be complementary: First, sec. 80.07 (1), Stats., explicitly states that it applies to *"any highway"* which supervisors "lay out, alter, widen or discontinue." As sec. 80.13 specifically permits supervisors to "lay out such highway" and "add enough land to its width," it is clear that these statutes are to be read together and as this court has repeatedly held, the specific provision controls the more general.[13]

---

[12] *State ex rel. Giblin v. Supervisors of the Town of Union* (1887), 68 Wis. 158, 161, 31 N. W. 482; *Morris v. Edwards* (1907), 132 Wis. 91, 97, 98, 112 N. W. 248; *Buchanan v. Wolfinger* (1941), 237 Wis. 652, 657, 298 N. W. 176.

[13] *Wisconsin Gas & Electric Co. v. Fort Atkinson* (1927), 193 Wis. 232, 241, 213 N. W. 873.

Second, in *State ex rel. Giblin v. Supervisors of the Town of Union,* this court specifically applied the ten-day provision of sec. 80.07, Stats. (then sec. 1269, R. S. 1878), to the sec. 80.13 proceedings to lay out an access to landlocked property (then sec. 1275, R. S. 1878):

"The language of sec. 1269 is sufficiently broad to include a highway laid out pursuant to sec. 1275, and we have no doubt that the legislature intended to include therein such highways." [14]

This court went on to hold that a delay beyond the ten days (over three months in *Giblin*) was "fatal to the validity of the highway in question." [15]

The reasons for requiring strict compliance with sec. 80.07, Stats., have been stated by this court in the *Giblin Case* noted above and in *Roberts v. Jeidy.*[16] In *Giblin,* this court stated:

". . . Were that the only statute on the subject, the courts might be compelled to hold that the applicant for the highway may take his own time to pay or refuse to pay the advantages assessed against him; thus keeping the persons whose lands the supervisors have determined to condemn to the public use in suspense for an indefinite period, as to whether their lands are ultimately to be taken or not, making the final result dependent upon the convenience or caprice of the applicant. That this uncertainty might and probably would interfere with the beneficial use of the land, and seriously embarrass the owner in his plans for the improvement and cultivation of his adjacent lands, is perfectly obvious. Besides, if the applicant delay more than thirty days after the determination of the supervisors to lay out the highway to pay such assessment so that the order may be filed and recorded, it is doubtful, to say the least, whether the owner of the land condemned could then appeal from such determination. It would be found difficult to strain the language of sec. 1276 so as to save in such case the right to appeal." [17]

[14] *Supra,* footnote 12, 68 Wis. at page 161.
[15] *Id.*
[16] (1950), 256 Wis. 603, 42 N. W. 2d 280.
[17] *Supra,* footnote 12, 68 Wis. at page 160.

In *Roberts,* we stated:

"Strict compliance requires the filing of the award as well as the decision laying out the highway. In fact, the language of the statute makes them, in effect, one instrument and does so apparently for the reason that it is desirable that a person whose land is taken for highway purposes may know at one and the same time that his land is to be taken and how much it is proposed he shall have for the taking. One might very well oppose the taking of his land but also consider that if he were given adequate compensation therefor he would offer no objection to the proceeding. The process designed by the statute affords him the means of knowing simultaneously that his land is to be taken and what he is to be paid therefor and thereby avoids the necessity on his part to make two separate attacks upon the proceeding." [18]

Because the town board's disputed order does not comply with the statutes, the defects are jurisdictional and we must, therefore, reverse the circuit court's order quashing appellant's writ of certiorari to review the order laying out the public highway.

This jurisdictional defect in the Hunter town board's order was not brought to the attention of the trial court. The court mentioned the jurisdictional issue with respect to the absence of adequate minutes of the various hearings. The court also mentioned the petitioner's contention that there was no showing of actual payment of the advantages. But no mention was made concerning sec. 80.07, Stats., and its ten-day requirement, by either the appellant or by the trial court.

Ordinarily, questions which are not properly presented to the trial court will not be considered for the first time on appeal.[19] However, this rule is not inflexible,

[18] *Supra,* footnote 16, 256 Wis. at page 607.

[19] *Milwaukee Acceptance Corp. v. Dore* (1969), 43 Wis. 2d 412, 419, 168 N. W. 2d 594; *State v. Conway* (1967), 34 Wis. 2d 76, 82, 83, 148 N. W. 2d 721.

and questions of jurisdiction have been held exceptions to the rule.[20] It is a rule of administration, not of power.[21] Here, since a jurisdictional question is presented, this court chooses to consider the issue here and holds that the failure to follow the statute is fatal to the town board's order.

We make one more observation. The minutes of the town board's hearing on the petition to lay out a road over NSP property are clearly inadequate. While minutes may be kept by other than the town clerk,[22] the statute contemplates the taking, contemporaneously with the events of the meeting, "faithful minutes of all the proceedings." [23] The minutes in the instant case were not recorded until several months after the hearings. They are inadequate and inaccurate, as evidenced by the fact that two of those alleged to be at the April 17, 1971, hearing were not there at all.

Since the town board's order is invalid for lack of jurisdiction, it is not necessary for us to reach the question of the effect on the validity of that order of the inadequate and inaccurate board minutes.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.

---

[20] *Cappon v. O'Day* (1917), 165 Wis. 486, 491, 162 N. W. 655.

[21] *Culligan, Inc. v. Rheaume* (1954), 268 Wis. 298, 310, 67 N. W. 2d 279; *State v. Conway, supra*, footnote 19, at pages 82, 83.

[22] Sec. 60.45 (1), Stats. ". . . and if in his absence another person shall have acted in his stead . . . ."

[23] Sec. 60.45 (1), Stats.