IN MATTER OF ESTATE OF WALKER, Deceased: STATE, Appellant, v. WALKER, Respondent. [Case No. 75–270.]

IN MATTER OF ESTATE OF HILLS, Deceased: FIRST WISCONSIN TRUST COMPANY OF MILWAUKEE, Appellant, v. STATE, Respondent. [Case No. 75–495.]

IN MATTER OF ESTATE OF MORSELL, Deceased: STATE, Appellant, v. MORSELL and another, Respondents. [Case No. 75–651.]

*Nos. 75–270, 75–495, 75–651. Argued December 1, 1976.
—Decided January 6, 1977.*
(Also reported in 248 N. W. 2d 410.)

For the appellant the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general. [Case No. 75–270.]

For the respondent there was a brief and oral argument by *Richard A. McDermott* of Milwaukee. [Case No. 75–270.]

For the appellant there was a brief and oral argument by *Richard A. McDermott,* of Milwaukee. [Case No. 75–495.]

For the respondent the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 75–495.]

For the appellant the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 75–651.]

For the respondent there was a brief and oral argument by *Richard A. McDermott,* of Milwaukee. [Case No. 75–651.]

ROBERT W. HANSEN, J.  The sole issue in these three cases involves the taxation of that share of a decedent's estate which is distributed to a surviving spouse. The dispute concerns construction and application of the statutes providing for a $50,000 exemption[1] and for the rate of inheritance taxation.[2] With all facts stipulated in

[1] Sec. 72.17, Stats. 1971, provides in pertinent part: *"Exemption from the first $50,000.* Exemptions from the tax, to be applied against the first $25,000 and then, where an additional amount is permitted, against the next $25,000, are allowed as follows: "(1) To a surviving spouse, property of a clear market value of $50,000. . . ."

[2] Sec. 72.18, Stats. 1971, providing in pertinent part: *"Rates.* When property is transferred by reason of a death to or for the use of a distributee and when its clear market value exceeds the exemption in s. 72.17, a tax, subject to the limitation under s. 72.19, is imposed at the following rates:

"Class A distributees are taxed upon the balance, if any, of the first $25,000 over the exemption at 2.5%; upon nonexempt property which exceeds $25,000 and does not exceed $50,000, at 5%; upon property which exceeds $50,000 and does not exceed $100,000, at 7.5%; upon property which exceeds $100,000 and does not exceed $500,000, at 10%; and upon property which exceeds $500,000, at 12.5%."

all three cases, the issue of construction presented is purely one of law.[3] Put in question form, that issue is: Should the lower bracket tax provisions of the statutes involved apply to the exempt share of the estate, or should the exempt portion of the estate be subtracted from the total distributed share with the remaining balance to be taxed, starting at the lowest tax rate? (The following discussion applies to all three cases, as the amendments in 1973 do not in our opinion significantly

In 1973 and effective January 1, 1974 (here affecting the *Morsell Case* only), the legislature amended this section to provide: *"72.18 Rates.* When property is transferred by reason of a death to or for the use of a distributee, a tax is imposed at the following rates:

"(1) A surviving spouse is taxed upon the balance, if any, of the first $25,000 over the exemption at 1.25%; upon property which exceeds $25,000 and does not exceed $50,000 at 2.5%; upon property which exceeds $50,000 and does not exceed $100,000 at 3.75%; upon property which exceeds $100,000 and does not exceed $500,000 at 5% and upon property which exceeds $500,000 at 6.25%. All other class A distributees are taxed upon the balance, if any, of the first $25,000 over the exemption at 2.5%; upon nonexempt property which exceeds $25,000 and does not exceed $50,000, at 5%; upon property which exceeds $50,000 and does not exceed $100,000, at 7.5%; upon property which exceeds $100,000 and does not exceed $500,000, at 10%; and upon property which exceeds $500,000, at 12.5%. The personal exemption applies against the lowest bracket." For present purposes the key addition is the last line: "The personal exemption applies against the lowest bracket."

As to the *Morsell Case* only, *see also* sec. 72.13, Stats. 1973, which provides in pertinent part: *"Imposition of Tax.* (1) The tax is imposed at the prescribed rates upon the transfer of property measured by its clear market value on the date of decedent's death less enforceable liens and the deductions and exemptions provided in this subchapter. . . ."

[3] *National Amusement Co. v. Dept. of Revenue,* 41 Wis.2d 261, 266, 163 N.W.2d 625, 627 (1969); *Browndale International v. Board of Adjustment,* 60 Wis.2d 182, 199, 208 N.W.2d 121, 130 (1973).

alter the reasoning involved. Also, for purposes of clarification, the *Morsell Case*, controlled by the 1973 statutes, will be separately discussed, *infra*.)

*POSITION OF TAXPAYERS.*

The taxpayers in each of the three cases submit the language of sec. 72.17, Stats. (1971 and 1973 being identical) which provides that exemptions from the tax are "to be applied against the first $25,000 and then, where an additional amount is permitted, against the next $25,000," must be read to refer to the entire net interest passing to the surviving spouse or other distributee. The taxpayers see this statute as having no bearing upon the tax to be imposed upon any excess, seeing that matter as dealt with only in sec. 72.18, Stats.

The provision in sec. 72.18(1), Stats. 1971, that "Class A distributees are taxed upon the balance, if any, of the first $25,000 over the exemption at 2.5%; upon non-exempt property which exceeds $25,000 and does not exceed $50,000, at 5% . . ." is seen as providing for a tax only when the clear market value of a distributable estate exceeds the exemption provided for in sec. 72.17, Stats.

The taxpayers also point out that nowhere in sec. 72.17 or 72.18, Stats., is it provided that the exemption is to be applied to any bracket or any nonexempt property remaining in any bracket. Under this view of the two sections it is contended that the distributees are taxed upon the balance, if any, of the first $25,000 over the exemption of $50,000 at the rate of 2.5%, and upon non-exempt property which exceeds $25,000 and does not exceed $50,000 at 5%, etc. The taxpayers argue this interpretation derives from the clear and unambiguous language of the statutes, and thus there can be no search

for legislative intent except the intent evident from the words of the statutes themselves.[4]

*POSITION OF DEPARTMENT.*

The state department of revenue submits the two statutory sections involved, secs. 72.17 and 72.18, must be read *in pari materia.* Reading these two sections together, the department suggests, creates an ambiguity resolvable only by the court construction of both. As to sec. 72.17, the department claims that in the *Walker Case,* for example, where there is a distributive share of $105,000, and a widow's exemption of $37,500, the exemption from the tax must be applied "against the first $25,000" and, because an additional exemption of $12,500 is still permitted, another $12,500 must be applied "against the next $25,000." This, it is submitted, requires the rate to be applied in the first instance on the $12,500 remaining in the second bracket to be the 5% rate.

As to sec. 72.18, Stats., the department contends that if the first $25,000 exceeds the exemption, the balance is taxed at the 2.5% rate. This, it is submitted, would only apply to all Class A distributees, except for a surviving spouse, as the usual exemption for all but a surviving spouse is limited to $4,000, leaving $21,000 to be taxed at 2.5% in the first bracket. It is contended that the second clause then requires that any nonexempt property over $25,000, but not over $50,000, is to be taxed at 5% in the second bracket. Under this interpretation, the third clause goes on to require that property exceeding $50,000, but not over $100,000, is to be taxed at 7.5%. Because the maximum allowable deduction is $50,000, under this interpretation there is no need to refer to

---

[4] *See: Transamerica Financial Corp. v. Dept. of Revenue,* 56 Wis.2d 57, 64, 201 N.W.2d 552 (1972); *National Amusement Co. v. Dept. of Revenue, supra,* at 266, 163 N.W.2d at 627.

property in such third bracket as being nonexempt, for all property exceeding $50,000 is taxable.

## DETERMINATION AS TO AMBIGUITY.

The threshold question to be asked and answered is whether there is an ambiguity presented as to the meaning of these two statutes, secs. 72.17 and 72.18, read together. It is the rule that statutes which are *in pari materia* are to be read together and harmonized where that is possible.[5] As this court has held, "An ambiguity can be created by the interaction of two separate statutes as well as by the interaction of the various words and the structure of the statute itself."[6]

The test as to existence of an ambiguity has been often stated by this court: " 'A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.' "[7] In the case before us, we find such ambiguity created by the interaction of the two statutes involved: secs. 72.17 and 72.18. The interpretation given these statutes by these taxpayers is not unreasonable, but neither is the construction urged by the state department. In fact, two county courts reached one interpretation and one county court reached the other. We apply the test of ambiguity to hold that here these statutes are capable of being understood by reasonably well-informed persons in either of two or more senses.

## DETERMINATION OF LEGISLATIVE INTENT.

The finding that ambiguity exists permits this court, in construing secs. 72.17 and 72.18, to consider the

[5] *Weiss v. Holman,* 58 Wis.2d 608, 619, 207 N.W.2d 660, 665 (1973); *Edelman v. State,* 62 Wis.2d 613, 215 N.W.2d 386 (1974). *See: State v. Lamping,* 36 Wis.2d 328, 153 N.W.2d 23 (1967).

[6] *Morrissette v. De Zonia,* 63 Wis.2d 429, 436, 217 N.W.2d 377, 381 (1974).

[7] *Madison Metropolitan Sewerage Dist. v. DNR,* 63 Wis.2d 175, 179, 216 N.W.2d 533, 535 (1974), quoting *Milwaukee Fire Fighters Asso. v. Milwaukee,* 50 Wis.2d 9, 13, 183 N.W.2d 18, 20 (1971).

legislative history of these statutes.[8] It is uncontroverted that the statutes, prior to the legislative enactments in 1971, provided for the determination of the tax as contended for by the department. In 1971, the language of sec. 72.18 was adopted.[9] (The amendment in ch. 90, Laws of 1973, applying to the *Morsell Case,* does not alter the critical words used and changes made in 1971.)

The voluminous minutes, bill drafts and other materials surrounding the drafting of the 1971 inheritance tax measure show no specific discussion of changing the method of computing the personal exemptions or of changing the manner in which the exemption was applied. A key reference for the purpose of determining legislative intent is found in the minutes of the Advisory Committee on Inheritance and Gift Tax meeting of December 18, 1970, page 22. Prior to this meeting, the bill draft which became sec. 72.18 read: "Class A distributees are subject to tax upon the balance of the first $25,000 over the exemption at the rate of 2.5%. . . ." At the committee meeting of December 18, the following discussion was reported:

"Mr. Lovejoy directed the committee's attention to subsection (1) of proposed sec. 72.18 on page 14. [This section then read as quoted above.] The way this subsection currently reads, he noted, it might be interpreted that the widow pays at the rate of 2.5% on the first $25,000 above the $50,000 exemption. *He stated that the committee's intent was that the widow would start paying in the 7.5% bracket after the $50,000 exemption and suggested that this section be reworded.* Mr. Boykoff suggested that this can be remedied by changing line 21 to read 'Class A distributees are subject to tax upon the balance, if any, . . .' "[10] [Emphasis supplied.]

---

[8] *Madison Metropolitan Sewerage Dist. v. DNR, supra,* at 179, 216 N.W.2d at 535. *See also: Northern States Power Co. v. Hunter Bd. of Supv.,* 57 Wis.2d 118, 125, 203 N.W.2d 878, 881 (1973).

[9] *See:* Ch. 310, Laws of 1971.

[10] Advisory Committee on Inheritance and Gift Tax meeting of December 18, 1970, p. 22. Mr. Boykoff was a member of this

The final language of the tax bill of 1971, now in sec. 72.18, Stats. 1971, incorporated the suggestion made, reading: "Class A distributees are taxed upon the balance, *if any,* of the first $25,000 over the exemption at 2.5% . . . ." [Emphasis supplied.] From the committee notes and subsequent amendment adding the words "if any," it appears clear that the intent of the legislature was to apply the exemption and tax the inheritance according to the formula urged by the department. The taxpayers respond that the additional words "if any" are without significance, merely creating a redundancy. However, this does not jibe with the legislative history of the additional words being added, and hardly carries out the rule of statutory construction that effect is to be given, if possible, to every word, clause, and sentence in a statute.[11]

The purpose of statutory construction is to ascertain the intent of the legislature. Here the legislature added the words "if any" and the reason stated for their being added negatives the construction of the statute now urged by these taxpayers. Our court has held that, in case of ambiguity, a statute is to be examined " '. . . first to discover the legislative purpose, and when that purpose is discovered it is to be so construed as to effect the evident purpose of the legislature if the language admits of that construction.' "[12] Also, our court has held

committee. *See:* Boykoff, *The New Wisconsin Inheritance, Estate and Gift Tax Law,* 56 Marq. L. Rev. 453 (1973).

[11] *Prechel v. Monroe,* 40 Wis.2d 231, 239, 161 N.W.2d 373, 376 (1968), citing *State v. Columbian Nat. Life Ins. Co.,* 141 Wis. 557, 566, 124 N.W. 502 (1910). *See: Omernik v. State,* 64 Wis.2d 6, 12, 218 N.W.2d 734, 738, 739 (1974), this court holding: "The entire section is to be considered in its construction or interpretation. Thus every word appearing in a statute should contribute to the construction of the statute in accordance with its ordinary and customary meaning."

[12] *Pella Farmers Mut. Ins. Co. v. Hartland Richmond Town Ins. Co.,* 26 Wis.2d 29, 41, 132 N.W.2d 225, 231 (1965), quoting

that, " '. . . A statute should be construed to give effect to its "leading idea and the whole brought into harmony therewith if reasonably practicable." ' "[13] We see both mandates complied with here by our holding that secs. 72.17 and 72.18 require that the exemption granted be applied against the lowest rate bracket, exactly as the department contends should be done.

■ Affecting the *Morsell Case* only, certain changes were made in the inheritance tax laws in 1973, sec. 72.18, Stats., *supra*, effective January 1, 1974. It is instructive to look first to sec. 72.13, Stats.[14] It is the contention of the personal representatives in the *Morsell* appeal that this section imposed a tax only upon the distributable estate remaining after subtracting enforceable liens, deductions and exemptions. The representatives further argue that the continued use of the word "nonexempt" in the second sentence of sec. 72.18(1), Stats. 1973, refers to taxable property. However, the major change effected by the amendments made in 1973 was in the addition to sec. 72.18(1) of a final sentence which reads: "The personal exemption applies against the lowest bracket." This sentence clearly supports the interpretation urged by the department. It comes close to eliminating an ambiguity so that the section as amended makes clear on its face that the tax is to be collected according to the method the department contends. That is, with the ex-

*Beckman v. Bemis-Hooper-Hays Co.*, 212 Wis. 565, 571, 250 N.W. 420 (1933).

[13] *Id.* at 41, 132 N.W.2d at 230, quoting *McCarthy v. Steinkellner*, 223 Wis. 605, 615, 270 N.W. 551, 271 N.W. 374 (1933).

[14] Sec. 72.13(1), Stats., 1973, provides in pertinent part: "*Imposition of Tax.* (1) The tax is imposed at the prescribed rates upon the transfer of property measured by its clear market value on the date of decedent's death less enforceable liens and the deductions and exemptions provided in this subchapter. In determining the taxable value of property transferred, a deduction is allowed for the amount of an enforceable lien on the property if the distributee takes the property subject to that lien."

emption applying against the lowest bracket of tax rate. We find no addition to or deletion from the inheritance tax law, as enacted in 1973, that makes our construction of the two sections—72.17 and 72.18—different in the *Morsell Case* than in the *Walker* or *Hills Cases.*

In reaching this construction of secs. 72.17 and 72.18 of the Wisconsin inheritance tax laws, we have neither noted nor relied upon the consistent interpretation of such statutes by the state department of revenue. This interpretation requires that the lower bracket taxed portion of the statute apply to the exempt share of the estate. This is what we construe the statutes to require and what the department has, since the statutes were enacted, interpreted them as requiring. While this court is not bound by an administrative agency determination of a statute,[15] such interpretation ". . . has great bearing on the determination as to what the appropriate construction should be."[16] Or, to put it differently, in case of ambiguity, " '. . . If several rules, or several applications of a rule are equally consistent with the purpose of the statute, the court will accept the agency's formulation and application of the standard.' "[17]

We do not find such equality of consistency in the situation before us. Instead, we find the legislative intent and enactment to support the interpretation given to secs. 72.17 and 72.18 by the state department of revenue. Nonetheless, the fact that such interpretation has been consistently followed by such state agency further sup-

[15] *Amans v. H&SS Department,* 70 Wis.2d 892, 236 N.W.2d 279 (1975); *Watkins v. ILHR Department,* 69 Wis.2d 782, 233 N.W.2d 360 (1975).

[16] *Milwaukee v. WERC,* 71 Wis.2d 709, 714, 239 N.W.2d 63, 66 (1976).

[17] *Id.* at 715, 239 N.W.2d at 66, quoting *Milwaukee Transformer Co. v. Industrial Comm.,* 22 Wis.2d 502, 510, 126 N.W.2d 6, 11 (1964). *See: Milwaukee v. Wis. Employment Relations Comm.,* 43 Wis.2d 596, 601, 168 N.W.2d 809, 811 (1969).

ports the conclusion here reached and construction of the statutes here given. With the three cases consolidated on appeal, and with the construction given the statutes involved resulting in one affirmance and two reversals, we award no costs to the prevailing party in any of three appeals taken.

*By the Court.*—*(No. 75–270*—the *Walker Case)* Order reversed and cause remanded with directions to compute the tax following the department of revenue formula.

*(No. 75–495*—the *Hills Case)* Order affirmed.

*(No. 75–651*—the *Morsell Case)* Order reversed and cause remanded with directions to compute the tax following the department of revenue formula.