STATE of Wisconsin, Plaintiff-Appellant,

v.

Carlton B. CAMPBELL II, Defendant-Respondent.†

Court of Appeals

*No. 80–335–CR. Submitted on briefs October 24, 1980.—*
*Decided April 21, 1981.*
(Also reported in 306 N.W.2d 272.)

† Petition to review denied. ABRAHAMSON, J., took no part.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *David C. Niblack,* state public defender, and *Steven D. Phillips,* assistant state public defender.

Before, Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   The state appeals from an order dismissing a criminal complaint against the defendant for

child abuse. The issue on appeal is whether the complaint states probable cause to believe that the defendant violated sec. 940.201, Stats. We hold that it does, and reverse.

Section 940.201, Stats., provides:

Whoever tortures a child or subjects a child to cruel maltreatment, including, but not limited, to severe bruising, lacerations, fractured bones, burns, internal injuries or any injury constituting great bodily harm under s. 939.22(14), is guilty of a Class E felony.

Section 939.22(14), Stats., defines "great bodily harm" as:

bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury.

The complaint is based upon the statement of a woman who resided in the apartment next door to that occupied by the defendant, his wife, and their ten-day-old baby. It alleges that on a given date the three came to her apartment at approximately 9:30 at night. The complaint recites:

The first thing Campbell said on entering the apartment was, that he had just thrown his baby against the wall. On further questioning he said "well, I didn't throw him against the wall but I threw him into the crib and he hit the side or something." Later that evening she observed Carl Campbell blow marijuana smoke into the baby's face in an attempt to induce sleep.

The complaint is silent as to whether the baby suffered any injury as a consequence of the defendant's alleged actions. It does not allege any "severe bruising, lacerations, fractured bones, burns, internal injuries or any injury constituting great bodily harm," which are

the specific examples of "cruel maltreatment" enumerated in the statute.

The trial court employed the rule of *ejusdem generis* in concluding that physical injury to the child is a necessary element of the crime of cruel maltreatment under the child abuse statute. Under that rule, where a general term such as "cruel maltreatment" is preceded or followed by a series of specific terms, the general term is viewed as being limited to items of the same type or nature as those specifically enumerated. *State v. Engler*, 80 Wis.2d 402, 408, 259 N.W.2d 97, 100 (1977); *La Barge v. State*, 74 Wis.2d 327, 332, 246 N.W.2d 794, 796 (1976).

The trial court reasoned that since all of the specific terms in the child abuse statute describe a type of physical injury, the general term "cruel maltreatment" was thereby restricted to other types of physical injuries not specifically enumerated. We disagree with this conclusion.

The limitations on the principle of *ejusdem generis* as a rule of statutory construction were noted in *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 89 (1934):

[W]hile the rule is a well-established and useful one, it is, like other canons of statutory construction, only an aid to the ascertainment of the true meaning of the statute. It is neither final nor exclusive. To ascertain the meaning of the words of a statute, they may be submitted to the test of all appropriate canons of statutory construction, of which the rule of ejusdem generis is only one. If, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule, we must give effect to the conclusion afforded by the wider view in order that the will of the legislature shall not fail.

The rule of *ejusdem generis* is not applicable unless the class or object to which the general word would be restricted is germane to the objectives of the statute. *Engler*, 80 Wis.2d at 409, 259 N.W.2d at 101. Nor will it be applied to restrict the meaning of a general term " 'if there is a clear manifestation of a contrary intent or purport.' " *La Barge*, 74 Wis.2d at 332, 246 N.W.2d at 796, quoting Sutherland, *Statutory Construction*, sec. 47.-22 at 118 (4th ed. 1973). Moreover, the specific terms must have a "common element" defining the class to which the general term is to be restricted for the doctrine of *ejusdem generis* to be applicable. *National Amusement Co. v. Dept. of Revenue*, 41 Wis.2d 261, 272, 163 N.W.2d 625, 631 (1969).

Whether the legislature intended the child abuse statute to prohibit only those kinds of "cruel maltreatment" actually resulting in physical injury is not apparent from the face of the statute. As both parties note, its present language is ungrammatical. The verb phrase "subjects a child to cruel maltreatment," prohibiting *conduct,* is followed by a series of nouns describing possible *effects* of conduct on a victim. It is uncertain whether the legislature intended to prohibit conduct actually causing the described effects; conduct which could, but need not cause them; or conduct "including, but not limited to," conduct which does (or could) cause physical injuries.

Where the meaning of an enactment is not clear, and is capable of being understood in two or more senses by reasonably well-informed persons, legislative intent may be determined through the use of extrinsic aids from the statutory language in relation to its scope, history, context, and subject matter, and the object to be accomplished or evil to be remedied. *Milwaukee County v. ILHR Dept.*, 80 Wis.2d 445, 452, 259 N.W.2d 118, 121

(1977) ; *In re Estate of Haese,* 80 Wis.2d 285, 291–92, 259 N.W.2d 54, 56–57 (1977).

The original version of the child abuse statute was created by ch. 456, Laws of 1969. It contained none of the specific enumerations of physical injury contained in the present statute, but punished as a misdemeanant any person who "tortures or subjects to cruel maltreatment any child." The original proposed version of the enactment, Assembly Bill 544, imposed the punishment on anyone who *"intentionally* tortures, *torments* or subjects to *physical abuse* or cruel maltreatment," any child. [Emphasis supplied.] The italicized language was eliminated from the legislation ultimately enacted.

The statute in its original form was only once construed by the Wisconsin Supreme Court in *State v. Killory,* 73 Wis.2d 400, 243 N.W.2d 475 (1976). In upholding the statute against a claim of unconstitutional vagueness and overbreadth, the court resorted to the common usage meaning of the term "cruel maltreatment." The court quoted with approval from a decision of the Oregon Court of Appeals which upheld a statute punishing anyone who "cruelly mistreats and maltreats a child."

"The words 'mistreat' and 'maltreat' are synonymous. They mean to treat badly or to abuse another. In the statute under consideration, these words are modified by the word 'cruelly,' which means to cause pain or hurt. These are all words of general or common usage and about which there is no great dispute as to meaning. It may be that in every instance not all persons would agree whether certain specified conduct was sufficiently beyond the normal to constitute cruel mistreatment. However, there would be no misunderstanding of the nature of the yardstick being applied.
" ' . . . .
" 'Cruel mistreatment' is no less definite than many other terms, such as 'negligent' and 'threaten,' which are commonly used in our criminal statutes to describe prohibited conduct. There is little dispute as to the general

kind of conduct prohibited, but there can be legitimate controversy concerning whether particular acts are aggravated enough to fall within the prohibition." 73 Wis. 2d at 406, 243 N.W.2d at 480, quoting *State v. Samter*, 4 Or. App. 349, 353, 479 P.2d 237, 239–40 (1971).

With respect to the Wisconsin statute, the supreme court found that "[t]he terms utilized in the statute are sufficiently definite in meaning, in accordance with their common usage and understanding, to meet constitutional standards." 73 Wis.2d at 407, 243 N.W.2d at 480. It also stated that the statutory language "connotes conduct which is abhorrent to the sensitivities of the general public." 73 Wis.2d at 407, 243 N.W.2d at 480.

Because *Killory* involved a factual setting in which physical injury had been inflicted on a child,[1] and the construction of a previous version of sec. 940.201, Stats., it is not dispositive of the question before us. We have no doubt, however, that the act of throwing a ten-day-old infant against a wall or crib as alleged in this case would fall within the scope of conduct "abhorrent to the sensitivities of the general public" within the meaning of the term "cruel mistreatment" as construed by that case.

Section 940.201, Stats., was twice amended during the 1977 legislative session. It was one of fifteen criminal offenses which were reclassified from misdemeanors to felonies under ch. 173, Laws of 1977, an act designed to establish a uniform system of classification for all crimes in this state. In a separate act, ch. 355, Laws of 1977, the legislature simultaneously amended sec. 940.201 to its present form, embodying the enumerated examples of

---

[1] The victim in *Killory* had been beaten with various devices and forced to take salt water enemas. The extent of her injuries is not described. The opinion states that the punishments inflicted on her resulted in "bruises evident on her legs which alarmed members of the high school staff." 73 Wis.2d at 404, 243 N.W.2d at 479.

cruel maltreatment, and repealed and recreated sec. 48.-981, Stats., the child abuse reporting statute.

Section 48.981, Stats., was originally enacted by ch. 333, Laws of 1965, to require certain classes of persons to report to the authorities facts giving "reasonable cause to believe that a child . . . has had physical injury or other abuse inflicted upon him by another, other than by accidental means." Failure to report was punishable as a misdemeanor. Section 48.981(3), Stats. (1975). Section 48.981(2) as amended requires a broader group of persons having professional dealings with children to report facts creating a "reasonable cause to suspect that a child . . . has been abused or neglected." "Abuse" and "neglected child" are separately defined under sec. 48.-981(1)(a) and (b). Sec. 48.981(1)(a) provides:

> "Abuse" means any physical injury inflicted on a child by other than accidental means, or sexual intercourse or sexual contact under s. 940.225. In this paragraph, "physical injury" *includes but is not limited to severe bruising, lacerations, fractured bones, burns, internal injuries or any injury constituting great bodily harm under s. 939.22(14).* [Emphasis supplied.]

No change was made in the penalty for failure to report.

The italicized language is almost identical to the language added to sec. 940.201, Stats., by ch. 333, Laws of 1977. That addition was not included in the early drafts of the bill, which proposed amendments only to the reporting statute and contained no reference to the abuse statute. The amendment to the latter was first proposed in the Conference Substitute Amendment 1 to Senate Bill 414, which became ch. 355, Laws of 1977.

The trial court grounded its disposition of the case on the legislature's statement of purpose in sec. 1, ch. 355, Laws of 1977. That statement, which does not appear in the statutes, provided:

It is the purpose of this act to protect the health and welfare of children by encouraging the reporting of suspected child abuse and child neglect in a manner which assures that appropriate protective services will be provided to abused and neglected children and that appropriate services will be offered to families of abused and neglected children in order to protect such children from further harm and to promote the well-being of the child in his or her home setting, whenever possible.

The trial court discerned from this statement, together with the amendment to sec. 940.201, Stats., previously noted, a legislative intent to reserve the criminal sanction for child abuse to cases where *serious* physical injury results from the prohibited conduct and to channel all other abuse cases to social agencies charged with helping families remain intact. We find the trial court's analysis unpersuasive.

A legislative intention to protect children and provide services to their families is not inconsistent with an objective to impose criminal punishment on those who abuse children, regardless of whether the abusers are family members. The statement of purpose appeared in the earliest drafts of the legislation, when the sole focus of the amendments was on the reporting statute. Possible prosecution of those causing injuries subject to the reporting statute, which includes burns and lacerations as well as far more serious types of bodily harm, was clearly contemplated when the statement of purpose was created. All drafts of the proposed amendments contain a provision, ultimately enacted as sec. 48.981(3)(b)3, Stats., requiring law enforcement officials responsible for investigating child abuse reports to "refer the case to the district attorney for criminal prosecution" if they "determine that criminal action is necessary." Substantially the same provision was contained in former sec. 48.981 (2), Stats. (1975). In no draft of the provision is the

prosecution limited to cases where serious physical injury has occurred.

The question is whether the legislature intended to limit the crime of child abuse to conduct involving some type of physical injuries when it added the enumeration of injuries defining "abuse" for reporting purposes to sec. 940.201, Stats., in the final draft of ch. 377, Laws of 1977. The defendant contends that the identical enumerations imply an identical scope for each statute. He observes that the criminal jury instruction committee has adopted this view. The comment to Wis JI—Criminal 1221, which sets forth the instruction for violations of sec. 940.201, notes the simultaneous amendments to both statutes and states that the identical language enumerating examples of abuse led the committee "to conclude that the offense of child abuse is *limited* to the intentional causing of *physical injury*." [Emphasis supplied.]

Statutes dealing with the same subject matter must be construed together and harmonized if possible. *In Matter of Estate of Walker,* 75 Wis.2d 93, 102, 248 N.W. 2d 410, 414 (1977) ; *State v. Wachsmuth,* 73 Wis.2d 318, 325–26, 243 N.W.2d 410, 414 (1976). This is especially true of the statutes in question, which were amended in the same bill. This general rule does not, however, compel the conclusion urged by the defendant and adopted by the criminal jury instruction committee.

The two statutes are more instructive in the differences remaining between them after the amendments than in their similarities. The legislature could have, but did not, replace the broad term "cruel maltreatment" in sec. 940.201, Stats., with the more specific general term "physical injury" employed in sec. 48.981(1)(a), Stats. Had it done so, the present child abuse statute would have read:

Whoever tortures a child or subjects a child to [physical injury] including, but not limited, to severe bruising, lacerations, fractured bones, burns, internal injuries or any injury constituting great bodily harm . . . .

The bracketed phrase, so easily added to the amendment of sec. 940.201, if physical injury were intended to be an element of the crime, was not added. Nor was "cruel maltreatment" independently defined, as is "abuse" under the child abuse reporting statute.

Since both statutes were under consideration at the same time, we conclude that the differences in the language chosen for each statute imply a different scope for each. This conclusion is buttressed by other differences between the two. The child abuse reporting statute applies to children under age eighteen. The child abuse statute applies to children under age sixteen. The reporting statute requires those to whom it applies to report instances of possible sexual abuse and neglect. The criminal abuse statute is silent as to those additional categories of abuse. We conclude that these two laws, while overlapping, are not coterminous.

The defendant argues that it would be illogical to suppose that the legislature intended to punish as a felony conduct not resulting in physical injuries which would not be subject to the reporting statute. We reject the contention.

The reporting requirement is exacted, on pain of criminal penalty, of persons in a position to view the effects of physical abuse, but not necessarily their cause. It is logical to restrict the exacted duty to readily observable effects creating "reasonable cause to suspect" child abuse. No equivalent logic supports that limitation on a statute prohibiting abusive conduct. It is possible to imagine many types of such conduct which would be unlikely to result in physical injury to the victim, but which would

be abhorrent to most. Locking a child in a closet for several weeks, for instance, or repeatedly beating a child for no reason with a device designed to cause extreme pain without leaving bruises or lacerations would commonly be viewed as acts of cruel maltreatment. A common sense construction of that term was endorsed by *Killory*.[2] The legislature is presumed to have known that at the time of the amendments. Its failure to delete the term or to expressly limit the child abuse statute to conduct involving physical harm is a persuasive indication that it intended no such limitation.

We conclude that the amendment was intended to ensure that all cases subject to the reporting requirements of sec. 48.981, Stats., would be subject to prosecution under sec. 940.201, Stats., and that it was not intended to restrict the scope of the latter statute. We therefore hold that physical injury is not an element of the crime of cruel maltreatment.

The complaint states probable cause to believe that the defendant is guilty of that crime. The order appealed from must therefore be reversed, and the cause remanded for further proceedings consistent with this opinion.

*By the Court.*—Order reversed, cause remanded.

GARTZKE, P.J. (*concurring*). I would hold that the complaint is sufficient. Throwing a child against a wall or into a crib exposes, and therefore subjects, a child to a serious physical injury, such as a severe bruise, bone fracture or internal injury, whether or not an injury resulted. That, in my view, is within the scope of sec. 940.201, Stats.

I look to the dictionary definition of the verb "subjects" because sec. 940.201, Stats., provides that a per-

[2] *See Killory*, 73 Wis.2d at 406–07, 243 N.W.2d at 480, quoted in part, *supra*, and 73 Wis.2d at 413, 243 N.W.2d at 483.

son who "subjects a child to cruel maltreatment" is a felon and does not require that the person "maltreat" the child. The dictionary definition is an appropriate guide because sec. 940.201, Stats., is the only part of the Criminal Code which uses the verb "subject" and because the verb has not been judicially defined in this state.

"Subject," as a verb, is defined in *Merriam Webster's Third New International Dictionary* (unabr. 1976) in material part as follows:

1a: to bring under control or dominion . . . . b: to reduce to subservience or submission . . . . 2a: to make liable . . . . 4: to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE . . . .

The import of these definitions and the synonym "expose" indicate that "subjects a child to cruel maltreatment" means to expose a child to maltreatment, whether or not the child directly suffers from maltreatment.

I agree with the trial court that the list of injuries in sec. 940.201, Stats., indicates a legislative intent that cruel maltreatment consists of serious physical injuries. It is difficult to conceive of a reason for listing "severe bruising, lacerations, fractured bones, burns, internal injuries or any injury causing great bodily harm under s. 939.22(14)" except to illustrate by example what is meant by "cruel maltreatment."

I cannot accept the majority's view that the legislature included the examples of cruel maltreatment in sec. 940.201, Stats., only to remind prosecutors that cases reported under sec. 48.981, Stats., may be prosecuted. That conclusion implies that without the examples prosecutors would not know whether a "bodily injury which creates a high probability of death" or another injury described in sec. 939.22(14), Stats., was child abuse under sec. 940.201. The more reasonable inference is that the legislature intended the examples to restrict the scope of "cruel maltreatment" to physical injury.

Various forms of nonphysical maltreatment easily come to mind, but to bring them within the reach of sec. 940.201, Stats., would be to ignore the illustrations provided by the legislature.